OTTO CALABRIA, as Administrator, etc., of PASQUALE CALABRIA, Deceased, Claimant, *v.* THE STATE OF NEW YORK, Defendant. (Claim No. 25268.)

Court of Claims, July 24, 1941.

*John C. Smith,* for the claimant.

*John J. Bennett, Jr., Attorney-General [James H. Glavin, Jr., Assistant Attorney-General,* of counsel], for the defendant.

Dye, J. The claimant's intestate, Pasquale Calabria, was a boy fifteen years of age and had been committed to Craig Colony as an incompetent epileptic, on or about December 31, 1937. At the time of his commitment he had attained the eighth grade in school and was classified as a moron, with a mental age of ten years and six months, I. Q. .66 He left the institution without leave on the evening of April 12, 1938, and while walking along the highway, about six miles from the institution, was run over by an automobile and killed. Claim is brought against the State on the theory that its officers and employees were negligent in failing to detain the deceased in such a manner as to prevent his departure from the colony without permission. This theory is buttressed largely on the claim that the State knew the deceased was an eloper, it appearing in the record that Patsy had left the colony on February eighth previous, without permission, and had been apprehended by the police authorities and returned to the colony. He was then placed in Onondaga Cottage, which is designed for close supervision, and is in the nature of a disciplinary ward. The deceased's stay in this cottage was without incident, and on March sixteenth, following, he was transferred to Hickory Cottage which is one of the open colony type.

Craig Colony, as we know, is a hospital for the care and treatment of epileptics. There are no recalcitrant or disciplinary cases committed to it, and the only disciplinary measures employed are those incident to the maintenance of good behavior at the colony. It is open, there are no bars on the buildings, or fences about the grounds, and much of the success of the treatment administered by the medical staff is due to the maintenance of as nearly a home-like and unrestrained social atmosphere as is permissible in a hospital for the treatment of cases of this sort. In order for the claimant to recover, he must show that the intestate's death was the natural and proximate cause of the failure of the State, its officials and employees to prevent the deceased from absenting himself without leave.

While the commitment papers designated Patsy as an " incompetent epileptic," the committing official probably used the word " incompetent " in the usually accepted laymen's sense of under-developed or unable to care for himself because of his epilepsy, rather than that he was insane, particularly as he had been classed a moron, mental age ten years and six months, I. Q. .66 In fact, the statute excludes insane epileptics from Craig Colony, and he had been certified by the committing physicians as an epileptic, mentally incompetent, but not insane, and a proper subject for custody and treatment in Craig Colony. There is no evidence

that the boy's conduct gave warning of his intention to absent himself from the colony.  He was free to leave the cottage, go about the grounds and generally enjoy all the freedom incident to a normal life, while staying at the colony, limited only by the rules and regulations necessary for an orderly social life.  He understood the rules and regulations of the colony and his behavior was co-operative.  Under these circumstances, it is difficult for this court to find that the State was bound to treat Patsy as a recalcitrant, simply because shortly after his admission he had become homesick and left the colony to visit his parents.  It was a natural thing for a new arrival to do, and when he was given to understand that such conduct was contrary to the rules, he made no other attempt at disobedience, and for all intents and purposes that particular difficulty was gone.  Their failure, therefore, to restrain him in close and restricted custody, did not constitute such neglect as to make the State liable in damages for his untimely and accidental death at the hands of a third party over whom the State had no control, under the rule of *Shattuck* v. *State of New York* (166 Misc. 271; affd., 254 App. Div. 926) and *Martindale* v. *State of New York* (244 id 877; affd., 269 N. Y 554).

The rule applicable to elopers is aimed at situations where close confinement is indicated by the character of the inmate's conduct which makes freedom dangerous to himself and others.  Craig Colony is designed to treat sufferers of the baffling affliction of epilepsy, who are neither dangerous to themselves or others, and whose conduct between attacks is quite normal and marked by co-operative behavior characteristics.  To hold otherwise is to lose confidence in a method of treatment long justified by its beneficial results.  But assuming that the rule of the *Shattuck* and *Martindale* cases does apply as to neglect for failure to keep this boy in close confinement, does it necessarily follow that the housing of the boy in an open colony cottage, and his absence without leave therefrom is going to be accompanied by death from being run down by an automobile on a public highway by a person over whom the State had no control?  Death on the highway is not the natural and probable consequence of an absence without leave, and this court does not feel justified in charging the State with any such responsibility.

While the statute, subdivision 6 of section 151 of the Mental Hygiene Law, uses the word " escape," it seems to me that the normal and usual description of the boy's act in leaving the institution and going into the highway was that of an absence without leave, and in violation of a stated rule, rather than escape from a place of detention.  The use of the word " escape " presupposes restricted confinement.  In the instant case there was no such

restriction, none was attempted, and the statute and the administration of the colony do not intend or provide for such restraint. Patients, as we have said before, were there for treatment, and while the State owes to them a duty of careful, efficient and effective care and treatment, commensurate with their condition, the State would not be justified in keeping them under such conditions of restraint that a mere absence without leave would constitute an escape.

It is claimed that the State was also negligent in the fact that the population of Craig Colony exceeded the normal limit by some 350 to 400 patients. This fact, however, was not conducive to the unfortunate circumstance in the instant case. Testimony is clear to the effect that Hickory Cottage at the time in question was only partially occupied.

Under all the circumstances, therefore, it is concluded that the State, its officers and employees exercised reasonable and ordinary care in the custody of the decedent, and that its failure to restrain him in such a fashion that it was impossible for him to absent himself without leave, was not the proximate and primary cause of the accident which resulted in his death.

Let the claim herein be dismissed.

RYAN, J., concurs.