EXCELSIOR INSURANCE COMPANY OF NEW YORK, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 25112.)

LIVERPOOL AND LONDON AND GLOBE INSURANCE COMPANY OF LIVERPOOL, ENGLAND, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 25113.)

ANTHONY L. WATHLEY, Claimant, *v.* STATE OF NEW YORK, Defendant.

(Claim No. 25114.)

Court of Claims, September 21, 1942.

*John E. Mack [Edward J. Mack* of counsel], for the claimants.

*John J. Bennett, Jr., Attorney-General [Gerald J. Carey* and *Martin P. O'Leary, Assistant Attorneys-General* of counsel], for the defendant.

DYE, J. Claimants allege negligence on the part of the State in allowing Francis Flood, a high grade moron, mental age 10 years 7 months, I. Q. 66, an inmate of the Wassaic State School, to escape through a basement window on the evening of February 19, 1936. In an effort to keep warm after his escape, he built a fire in a barn belonging to claimant Wathley; some straw in the barn was ignited and three buildings and their contents were destroyed.

Actionable negligence imports failure to perform a duty, where the actor can anticipate the probable results of such failure. The problem presented by the facts is whether the State owed the claimants a duty which it failed to discharge. That the State has an obligation to exercise reasonable diligence in protecting wards committed to its care from harm, either selfinflicted or otherwise, is unquestioned. (*Martindale* v. *State of New York*, 244 App. Div. 877; affd., 269 N. Y. 554; *Shattuck* v. *State of New York*, 166 Misc. 271; affd., 254 App. Div. 926.) As to tortious acts committed by its wards on members of society at large, no greater duty exists than is applicable to an individual under a similar relationship. If this relationship is that of guardian and ward, there is no liability at common law. Here the relationship of principal and agent or master and servant do not exist to bring this situation within the tenets of the familiar doctrine of *respondeat superior*.

Nor can a corollary be drawn from *Calabria* v. *State of New York* (176 Misc. 925; affd., 263 App. Div. 1056; affd., 289 N. Y. 613) which stated as a general proposition that the rule applicable to elopers is aimed at situations where close confinement is indicated by the character of the inmate's conduct which makes freedom dangerous to himself and others.

The very character of the institution in question indicates that it was not the intention of the State to assume such responsibility. The avowed purpose of the school is the rehabilitation of mental defectives and their preparation for a useful place in society. Close confinement is not part of the rehabilitation routine, a certain amount of freedom of activity is the natural order of things. In the execution of this policy, the State does not guarantee that it will guard against any harm which might be sustained by members of society at the hands of eloping wards. To do so would be to suspend the fundamentals of common-law doctrine and place the State in the position of an insurer.

Suppose we assume there is a duty owing to the claimants. Must we not then ask, and satisfy the inquiry by a preponderance of the evidence in what respect the State was negligent in the performance of its duty. Was it negligent in allowing the mentally defective Francis Flood, in company with several other boys, to go to a basement room to smoke? Was it negligence for the charge nurse to leave them there for a few moments while she asnwered the call of patients in the adjacent hospital ward? Was it negligence not to bar a small basement window and not to anticipate that the other boys would assist in shoving Flood through this window to effect his elopement? Was the failure to observe the rule to notify the charge nurse that Flood was an eloper negligence? If we answer all of these in the affirmative, we must still find that the State had reason to believe that Flood's past conduct and propensities were such that they should, in the exercise of ordinary prudence, reasonably anticipate that his elopement would result in harm to others. The undisputed fact is that there was nothing in Flood's past record of elopements or of his conduct in various institutions where he had been confined that would serve as a warning that what occurred was likely to occur.

The respective claims should each be dismissed on the merits.

Let judgment be entered accordingly.

RYAN, J., concurs.