JOSEPH M. KIERNAN, Claimant, v. STATE OF NEW YORK, Defendant. (Claim No. 28784.)

Court of Claims, March 14, 1949.

*Max J. Merbaum* and *Benjamin S. Rosenfeld* for claimant.

*Nathaniel L. Goldstein, Attorney-General* (*Edward R. Murphy* and *Arthur I. Seld* of counsel), for defendant.

GREENBERG, J. This claim is to recover damages for personal injuries sustained by claimant when he eloped while an inmate at the Kings Park State Hospital on December 17, 1934.

Claimant, suffering from dementia praecox paranoia, had been recommitted to the State hospital in 1932, with a prior record as an eloper. Subsequently, he escaped from the institution in May, 1933, July, 1934, October, 1934, and December, 1934. At the time of the last elopement, claimant had been confined to Ward 58, a closed ward wherein are kept patients necessitating supervision and from which patients cannot leave unattended. This ward was a locked ward, where there were bars on all windows and openings and where attendants were present at all times. Following claimant's escape on December 17, 1934, it was ascertained that the fire-escape door was unlocked, the keys to which had been solely in the possession of the attendants. The fire escape was so built that on going through said door and leaving the interior of the building, one stepped out onto a platform and then down a stairway leading directly to the grounds. There was no gate or door at the landing, or at any intermediate point, so as to constitute a barrier or deterrent blocking escape. The hospital grounds are covered but in part by a fence and the other part is open and unrestricted.

No explanation is proffered by the State as to why the fire-escape door was unlocked or the reason or occasion for the inmate's absence from the ward. The cogent fact, however, remains that on said date the claimant once again escaped, took to the woods adjoining the asylum, where he remained for twenty-four hours in freezing weather, and later boarded a train to New York City unmolested. As a direct result, claimant sustained frostbite necessitating the amputation of parts of five toes of one foot and three of the other.

" That the State was derelict in its duty to its ward is evident from the proof in this case. The State failed to take the necessary precautions and to maintain the necessary supervision and control over one who had previously manifested escapist proclivities so as to avoid a further escape and the dire consequences that might ensue. Accordingly, the State must be held to respond in damages. (*Martindale* v. *State of New York,* 244 App. Div. 877, affd. 269 N. Y. 554; *Shattuck* v. *State of New York,* 166 Misc. 271, affd. 254 App. Div. 926; *Callahan* v. *State of New York,* 179 Misc. 781, affd. 266 App. Div. 1054.)'' (*Burtman* v. *State of New York,* 188 Misc. 153, 155–156.)

Surgery was thereafter performed on claimant in January, 1935. His right foot was amputated above the line of demarcation at the middle of the proximal phalanx of the great toe and the second toe and disarticulation at the interphalangeal joint, of the third, fourth and fifth toes. The left foot was amputated above the line of demarcation at the middle of the proximal phalanx of the great toe and the second toe and disarticulation at the distal joint of the third toe. He was confined to bed until June 30, 1935, and to the ward until September 14, 1935. At the present date, he walks with a waddling gait. In October, 1939, claimant had been discharged from the State hospital. However, it was not until December 21, 1945, that he was adjudged to be competent to manage his own affairs and on April 21, 1947, an order was duly made discharging his committee.

An award is accordingly made herein to the claimant in the sum of $5,000 for his aforesaid injuries and pain and suffering.