Melvin R Osteeman, J.
This is a claim for negligence of the State of New York in the operation and maintenance of Boekland State Hospital.
On January 17, 1958, the claimant’s decedent, Morton Aaron-son, escaped from the hospital. On January 19, 1958, he was *828 placed on elopement status. On February 26, 1958, he was found dead in an abandoned house located in the nearby community of Blauvelt, New York. This claim alleges that the State failed to properly supervise the movements of Morton Aaronson and negligently permitted his escape.
The defendant must use reasonable care in the supervision of patients in its mental hospital in order to prevent injury to themselves (Kiernan v. State of New York, 194 Misc. 490). The duty of supervision is measured in terms of the' “ risk reasonably to be perceived ” and it is often said that the hospital must have knowledge of the patient’s proclivities towards self-harm in order to establish a standard of constant supervision and care. In the case at bar, the hospital record and history of the decedent clearly established that he was such a patient, and that the hospital was under a duty to guard against his elopment and injury.
Upon his admission in 1956, it is noted that he had suicidal tendencies; two additional notes during the year 1956 indicate a proclivity towards self-injury and a need for supervision; in October, 1957, he escaped from his mother during a visit to the hospital grounds; in November, 1957, he escaped from his father during a similar visit, and even the hospital visiting record notes that he is ‘ ‘ an eloper ’ ’.
Against such a background the hospital was duty bound to exercise a high degree of supervision over the movements and whereabouts of this patient, and any breach of that duty is negligence.
On the day of the escape, the patient had been taken from his ward with a group of nine other patients to attend Jewish services held in an assembly room. The group was accompanied by two guards, neither of whom were informed of Aaronson’s tendencies. Many other groups attended the services and after they were over, each group would rise and proceed in order to the exit door. It was during this time that Aaronson escaped. The testimony of the guards introduced through their examinations before trial reveals that Aaronson’s group of patients was in no way segregated from the other groups; that when services were over all the patients arose and there was general confusion and disorder in trying to move them out of the building; that the seats in Aaronson’s row were not stationary and he could move from one row to another row during all the confusion; that the patients lined up in the aisle next to their row during which time other groups of patients were also proceeding through the aisle to the exit door; and that there *829 was no physical barrier to keep Aaronson from mingling with other groups of patients.
The court finds that the supervision of Aaronson at the time of leaving the assembly hall was not commensurate with the duty of care to be observed in this case. The care and supervision afforded was, in the overall, lax and negligent.
With respect to the cause of action for conscious pain and suffering, there can be no direct evidence thereof since death occurred during the decedent’s self-imposed solitary confinement. However, the autopsy report reveals that the left foot and left leg were severely frostbitten with gangrene setting in; that there was evidence of frostbite of the right foot, right leg, the nose and the ears, and that there was also evidence of lack of food and malnutrition. In the pathologist’s opinion, the death did not occur more than three days before finding the body which meant that the decedent was alive from January 17 to approximately February 23, a period of 37 days. The court does not say that the decedent was conscious during all that time, nor, conversely, can it require the claimant to have direct evidence of the exact amount of conscious suffering. Suffice it to say that the decedent must have been conscious at least some of the time after his escape and that some of the pain and suffering of the hunger and of frostbite must have been felt by him. Accordingly, the court awards the estate of the decedent for the cause of action based on conscious pain and suffering the sum of $3,500.
With respect to the cause of action for wrongful death, the court, of course, will not consider any of the sentiment, anguish or grief felt by the loss of a son. We are concerned only with the pecuniary loss suffered by the next of kin as a result of the decedent’s death. As was said in Slater v. State of New York (192 Misc. 826, 828): u The precise question in this case, therefore, under the cause of action for wrongful death is, what were the pecuniary benefits of decedent’s father and mother in the continuance in life of the decedent under all existing circumstances? ”
In the case at bar, the decedent had apparently an uneventful childhood and adolescence with respect to any psychotic or neurotic manifestations. However, in 1954, he was voluntarily committed to New York State Psychiatric Institute and remained there until January, 1956. Upon his discharge he obtained a $75 per week job with the United States Post Office, but held it for five months only. In November, 1956, after five months of unemployment, decedent was admitted to Bellevue Hospital and 13 days *830 thereafter was admitted to Rockland State Hospital where he stayed until his escape. The progress notes of his case are most discouraging: in July, 1957, eight months after admission, it is stated, u No real change in his mental status since admission ’ ’; throughout the record his condition is consistently described as ‘ ‘ dementia praecox, mixed type 5 ’ and his prognosis ‘ ‘ unimproved ’ \
Under such circumstances, the court finds that the claimant has failed to sustain his burden of proof of demonstrating to the court that there was reasonable expectation of pecuniary gain by the parents by virtue of the continued life of the decedent. Neither his mental condition, nor his prior earning capacity, nor his relationship pecuniarily with his parents indicate to this court that pecuniary damages should be awarded. Accordingly, the court awards damages based on the funeral and interment expenses of the decedent in the amount of $826.05, and the claimant shall have judgment for that amount with appropriate interest.
All motions made by the State upon which the court reserved decision during trial are hereby denied.