GEORGE E. SHATTUCK, an Infant, by GEORGE W. SHATTUCK, His Guardian ad Litem, Claimant, *v.* THE STATE OF NEW YORK, Defendant.

(Claim No. 23449.)

Court of Claims, February 24, 1933.

*Nevins & Nevins*, for the claimant.

*John J. Bennett, Jr., Attorney-General* [*Paul Muscarella, Assistant Attorney-General*, of counsel], for the defendant.

ACKERSON, J. This claim is based on the negligence of the State's employees of the Newark State School at Newark, N. Y., in permitting the infant claimant to escape in the month of February, 1933, scantily clad. Shortly after his escape the weather turned

exceedingly cold. As the result of his exposure, the boy's feet and legs were so frozen that both of them had to be amputated below the knee.

The Newark State School is an institution for the care and treatment of mental defectives. This boy was delinquent by reason of being a mental defective. In accordance with due process of law and upon the order of the judge of the Children's Court of Cattaraugus county he was taken from his home and lodged in the said State school. Thereupon the State assumed the responsibility of caring for him and keeping him from harm and injury. It is the supposition of the law also that at the school he would be subjected to mental gymnastics for the purpose of brightening up his feeble intellect and in so far as possible rendering him a useful citizen. At the time of his commitment the boy was fourteen or fifteen years old. The story of his life at the school as revealed by the evidence constitutes an unpleasant picture, one that is certainly not a credit to the State in this age of enlightenment when humanitarian principles are supposed to govern the State in its treatment of such unfortunates. The record discloses that very little was done in the way of treatment for his mental condition. He was put to work as though he were in a penal institution. Instead of going to school as the name of the institution would imply, he was assigned to the service building where he remained daily from six-thirty o'clock in the morning until seven in the evening, working most of the time with only half hour interruptions for his meals and perhaps some brief recreation periods for reading and playing cards. The boy suffered from nostalgia and this longing for home moved him to attempt to escape from the institution. He succeeded in this effort on January 6, 1933, and roamed aimlessly about the country. Within a few days he was captured and brought back. Then he was known as an " eloper " and then the authorities of the institution had notice that he would escape if he could. This notice went unheeded. The first escape was made by means of an unblocked top sash of a window in the tin room adjoining the kitchen where the boy worked. Thereafter the kitchen windows and the tin room windows were blocked at the top as well as at the bottom but in an adjoining laundry room the windows were not blocked at the top. They were identical with the window through which Shattuck first escaped.

The rules of the school require a constant watch of " elopers," but owing to the lax supervision of the claimant's movements he again succeeded in climbing through an unblocked window from the adjoining laundry room and escaped on February 23, 1933. This second escape was made during severe weather in the

winter time. The boy had on only such clothing as he wore at his menial tasks in the institution, consisting of a shirt, a pair of overalls, cotton socks, cotton underwear and a pair of shoes. In escaping he took his cap but not his coat. The boy's absence was discovered by the attendants at the institution within a few minutes after his escape. Telephone messages were sent to the police departments of nearby villages and to the nearby State police station and were transmitted over the teletype system to all State police stations. These messages gave a description of the claimant and instructed the police to search for him. However, the claimant, with some degree of cunning, eluded detection and it was not until March thirteenth that he was found, frozen and unconscious, by a farmer in his barn near Atlanta, N. Y.

In our opinion the State failed to exercise in respect to this boy that degree of care required by it. It not only made little or no effort to help its ward mentally, but in refusing to properly recognize the obligation imposed upon it by law to protect him from physical injury it thereby became guilty of the neglect which resulted in the boy losing both legs. The State's benevolence, therefore, in his case not only failed to help him mentally, but it was the active agent in making him a cripple for life.

Public or private institutions maintained for the care of those unfortunates suffering from mental or nervous defects or diseases have imposed upon them the legal duty of taking every reasonable precaution to protect their patients from injury, either self inflicted or otherwise. (*Van Patter* v. *Town Hospital*, 246 N. Y. 646; *Paige* v. *State*, 245 App. Div. 126; *Curley* v. *State*, 148 Misc. 336; *Wilcove* v. *State*, 146 id. 87; *Phillips* v. *St. Louis & S. F. R. R. Co.*, 211 Mo. 419; 111 S. W. 109; *Martindale* v. *State*, 269 N. Y. 554.)

The two escapes here make this case, in so far as the responsibility for the second escape is concerned, similar to the case of *Martindale* v. *State* (*supra*). In that case the claimant's intestate escaped from the Syracuse Psychopathic Hospital. She was retaken and brought back to the institution. She escaped a second time in a manner similar to that of her first escape, that is, by removing a lug from a window, thereby allowing the upper sash to come all the way down. In this court we held that the first escape was notice to the hospital authorities of the patient's propensity in that regard and that they should have heeded the warning and taken measures to prevent the subsequent escape. Their failure to do so, we held, constituted negligence for which the State was liable. In this holding we were affirmed both by the Appellate Division and by the Court of Appeals.

We have exactly the same situation here on the question as to whether or not the State was negligent in permitting the second escape. The State was forewarned by the first escape and should have taken proper measures to prevent the second. Failing to do so, it was guilty of negligence and liable in damages for the injuries sustained by this infant claimant if they resulted from such negligence.

Although claimant's injuries were the immediate result of exposure in the severely cold weather, the negligence of the State was their proximate cause, as its wrong started in motion a sequence of events which should have been readily foreseen and which were in no way deflected or changed by the intervention of any independent forces. (*Palsgraf* v. *Long Island R. R. Co.*, 248 N. Y. 339; *O'Neill* v. *City of Port Jervis*, 253 id. 423; *Sweet* v. *Perkins*, 9 id. 482; *Donnelly* v. *Piercy Contracting Co.*, 222 id. 210; *Carlock* v. *Westchester Lighting Co.*, 268 id. 345; *Slavin* v. *State*, 249 App. Div. 72.)

The claimant was but a shade better than an imbecile and literally did not know enough to come in out of the cold. He did not appreciate his danger and was still in flight from the institution when the harmful consequences of his being permitted to escape on a winter's night, scantily clothed, took place. These consequences were a risk reasonably to be perceived by the State's employees under the circumstances.

We believe this claimant is entitled to an award.

RYAN, J., concurs.