FRUGÉ, Judge.
Plaintiff brought suit in tort for damages. In his petition plaintiff alleged that on or about September 10, 1963, he was injured while performing his duties as manager of the Union Cotton Gin at Marksville, Louisiana ; that at 9:30 p. m. on the night in question, due to the loss of electrical power, the lights in the gin began to flicker and various engines reduced speed, etc.; that he ordered the ginning operation to be stopped, and when that had been done, he attempted to turn off all electrical power in the building at the fuse box; that when he grasped the handle of the fuse box, he received an electrical shock of considerable force which stunned him. He further alleged that he staggered out of the building, and when he arrived outside, defendant’s power cable which served the gin broke and fell to the ground with very bright flashes of light, causing flash burns to his eyes. *340 Plaintiff also alleged that defendant was negligent in failing to provide a safe and adequate electrical power supply, and in failing to warn him of the dangerous condition.
Defendant answered plaintiff’s petition, denying the material allegations thereof, and further alleged plaintiff’s contributory negligence ail'd last clear chance to avoid the accident.
After a trial on the merits, the lower court gave judgment in favor of the plaintiff. From that judgment defendant has appealed suspensively. Plaintiff answered the appeal, seeking an increase in the quantum of damages.
Precisely what caused the series of events or accident here involved is not established by the evidence, which is borne out by the fact that the lower court applied the doctrine of res ipsa loquitur in reaching its decision for the plaintiff. Plaintiff contends the doctrine should apply; defendant contends it should not.
The doctrine of res ipsa loquitur is a rule of evidence peculiar to the law of negligence and is an exception to the general rule that negligence must be affirmatively proved. Talbert v. Tyler, La.App., 121 So.2d 854. The phrase “res ipsa loqui-tur” literally means “the thing speaks for itself”. Thus when an accident occurs, causing injury, and it is shown that the instrumentality which caused the accident is under the control of the defendant and that the accident is such as would not occur in the ordinary course of things if the one having control uses proper care, then the injury is presumed to have been caused by defendant’s negligence and the burden of proof is shifted to the defendant to exculpate himself from fault. Great American Indemnity Company v. Ford, La.App., 122 So.2d 111.
In the recent case of James v. Child’s, Division of Kroger Company, La.App., 166 So.2d 77 (3rd Cir. 1964) we stated that in order for the doctrine to apply there must appear more probability than not that the injury was attributable to a violation of defendant’s duty to plaintiff. The test has been succinctly stated as follows: Do the facts shown suggest the negligence of the defendant, rather than other factors, as the most plausible explanation of the accident?
The doctrine of res ipsa loquitur is particularly applicable where the accident is caused by dangerous instrumentalities, such as high explosives, gas, electricity, etc. Langlinais v. Geophysical Service, Inc., 237 La. 585, 111 So.2d 781 (1959).
An early case applying the doctrine to electric power lines is Hebert v. Lake Charles Ice, Light & Waterworks Company, 111 La. 522, 35 So. 731 (1903). The facts were very similar to those in the present case. There, an electric wire of the defendant electric company fell into the street for some unknown cause. Plaintiff’s husband came in contact with the wire and was killed. The court held the doctrine of res ispa loquitur applicable, stating:
“ * * * where an individual or a corporation owns and operates an electrical light plant generating a high current of electricity, conveying it by means of overhead wires along the streets of a town or city, and it is shown that a traveler upon one of the streets came in contact with one of its wires lying upon the sidewalk and was killed thereby, he being without contributory negligence, the burden of proof is upon it to show that the wire was without negligence on its part (res ipsa loquitur); (citations omitted).
“We are of the opinion that this proposition is conservative and correct. The owners of electrical machinery are in a much better position to know and be informed as to its situation, when such a condition of things takes place, than would be an entire stranger to its affairs, who, being lawfully upon the street, should have been injured by its wires.”
*341 A later case in which the doctrine was applied is Ledet v. Lockport Light & Power Company, 15 La.App. 426, 132 So. 272 (1st Cir. 1931), where a high voltage electric line fell, for some unknown reason, and plaintiff’s son was killed on coming in contact therewith. The court held the doctrine of res ipsa loquitur applicable and also that defendant had not sustained its burden of showing some other cause of the accident for which it was not responsible.
With this understanding of the doctrine of res ipsa loquitur, let us examine the facts of the present case. There is no question but that the power line which broke was a service line of the defendant, leading from its pole to the premises of the Union Cotton Gin. This service line was, of course, under the exclusive control of the defendant power company at the time of the accident. In the ordinary course of events, such a wire does not break and fall to the ground unless the party having control thereof has failed to use due care. Under the circumstances, we think it is clear that the doctrine of res ipsa loquitur applied here.
Having determined that the doctrine applies, the burden shifts to the defendant to show that the accident was caused by something for which it is not responsible. In this regard the district judge concluded as follows:
“The court cannot say what went wrong, but something did go wrong. Perhaps the insulation around the wires got old and cracked, causing the short circuit; perhaps the wires overloaded, because of the size of the cable used; perhaps the overload, by reason of the cable’s size, caused undue heating and melting of the insulation; the court does not know. The court, however, does not believe it is the plaintiff’s burden to prove the cause of the mishap.”
The lower court was not satisfied, nor are we, that the defendant established the cause or a cause which exonerated it from fault or negligence.
 The record is clear that after the accident occurred certain modifications were made by the defendant power company in the size of the cable and in the size of the KVA transformers. This is an indication that possibly the pre-existing cable and transformer were inadequate for the load required at the plaintiff’s business. If this be the case, the power company must accept the responsibility for the injuries sustained by the plaintiff due to the overload and subsequent breaking of its cable.
The evidence presented by the Louisiana Power & Light Company was insufficient to refute the inference that its negligence was not the most plausible explanation of the accident in view of the high duty of care that accompanies those who exercise exclusive control over dangerous instrumentalities such as electricity.
The next question is the extent of the injuries sustained by the plaintiff as the result of this accident.
Plaintiff was seen by Dr. F. P. Bordelon, Jr., a general practitioner in Marksville, Louisiana, the night of the accident. Dr. Bordelon’s objective findings were excessive teardrops, eyes very red, severe sensitivity to light, and soreness to the right arm, and cramps. From these symptoms and the history given to him by the plaintiff, Dr. Bordelon diagnosed plaintiff’s injuries as flash burns to the eyes and myositis of the right arm. It was this doctor’s testimony that the condition he found would cause the plaintiff great pain. Plaintiff continued to complain of pain to his eyes for five days following the accident. Dr. Bordelon saw the plaintiff on four occasions from September 11 to September 24, and on each occasion found plaintiff to be apprehensive of his eye condition. As of his last visit to Dr. Bordelon, the doctor testified that plaintiff’s vision was still impaired.
On September 25, 1963, plaintiff was examined by Dr. E. D. Wilson, a specialist *342 in ophthalmology. At this time Dr. Wilson could find no eye abnormality. He testified that the eyes heal very rapidly when injuries to the eyes are not of a permanent nature.
Considering plaintiff’s injury, the pain, suffering, apprehension and loss of income attributable to the accident, we cannot say, after a careful review of the entire record, that the lower court committed manifest error in allowing plaintiff recovery of $2,500 for his pain, suffering and medical bills, nor can we find error in the lower court’s award of $2,100 for loss of income the plaintiff suffered as a cotton buyer and trucker while he was disabled.
No citation is needed for the proposition that this court will not disturb the lower court’s finding without a showing of manifest error, therefore the judgment of the lower court is affirmed; all costs to be assessed to the appellant.
Affirmed.
HOOD, J., dissents and assigns written reasons.
SAVOY, J., dissents for reasons assigned by HOOD, J.