212 So.2d 487 (1968)
Mrs. Bertha Jordan WATERS and Glenn Waters, Plaintiffs-Appellees,
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY and Martel A. Bates, Defendants-Appellants.
No. 2376.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1968.
Rehearings Denied July 29, 1968.
*488 Watson, Brittain & Murchison, by Jack O. Brittain, Natchitoches, for defendants-appellants.
Thomas & Friedman, by Gerard F. Thomas, Jr., Natchitoches, for plaintiffs-appellees.
Before SAVOY, HOOD and CULPEPPER, JJ.
SAVOY, Judge.
This is a suit in tort instituted by plaintiffs as the surviving widow and son of Cull D. Waters who died as a result of injuries received on the farm of Martel A. Bates. Made defendants are Bates and his liability insurer, Southern Farm Bureau Casualty Insurance Company. The Confederate Medical Center intervened in this suit, praying for judgment against defendants in the sum of $498.00 for medical expenses incurred by defendants because of the accident. After a trial on the merits, the district court granted plaintiffs and intervenor judgment in the sum of $49,998.00 against said defendants in solido.
The above award was broken down as follows: $498.00 awarded the Confederate Medical Center as prayed for in its petition of intervention; $15,000.00 to plaintiffs for pain and suffering, said sum to be divided equally between the parties; $12,000.00 to Mrs. Waters for loss of companionship, love and affection and mental anguish; $15,000.00 to Mrs. Waters for loss of support; $7,500.00 to Waters' son for loss of companionship and affection.
Bates and Southern Farm appealed. Plaintiffs answered the appeal praying for an increase in the award.
The evidence shows that Mr. Bates, owner and operator of a grocery store and gasoline filling station in the Town of Provencal, invited the late Cull D. Waters to accompany him to his 40-acre farm in Bellwood. Waters was not an employee of Bates, and Bates invited him because he just wanted company. The purpose of going down to the farm that day was to burn piles of brush that had previously been cut and stacked.
Bates testified that while in the store and in the presence of Waters, he put four gallons of kerosene in a five gallon can to bring with him to the farm to help ignite the fires. The can had been used on previous occasions to carry gasoline as well as kerosene. Mr. Bates did not check to see if anything was in the can prior to pouring in the kerosene. The can had a cap on the large hole on the top, but it did not have anything over the nozzle or the spout. After pouring the kerosene into the can, Bates put the can in his pick-up truck and drove the pick-up truck to the farm, with Waters riding in the passenger seat.
When they arrived at the farm, Bates stopped the truck, opened the gate, drove inside, and stopped the truck just inside the gate where he left it parked. Bates got the can and proceeded to set fire to the various piles of brush which he had previously stacked. In the meantime, Waters walked over to a creek to see if it was a good place for fishing. Bates had four or five piles to burn, and when Waters returned from the creek, Bates was setting fire to the second or third pile. Waters accompanied Bates to the next pile. Bates did not ask Waters to assist him, and does *489 not recall Waters having granted any assistance.
Bates testified that when he finished lighting the last pile, he took two steps back and set the can down on the ground. At that time, the can had approximately one to one and one-half gallons of liquid left in it. The piles which Bates had been igniting were approximately twelve feet in diameter and four feet high, and consisted of small pieces of dried brush that had been cut a year before.
After setting the can down, Bates went to his truck which was down at the gate about a three-and-one-half-minute walk. Waters stayed in the general vicinity of where the last pile of brush was burning. When Bates left he did not ask Waters to do anything.
Bates got in his truck and drove it to within 150 feet of where Waters was located when his truck became stuck. He got out of his car and looked at the wheel that was stuck when the explosion happened. Bates was facing in the opposite direction of Waters and turned around when he heard the explosion. Waters was running towards him and was a solid ball of flame. Bates testified he could not see Waters until he started running towards him. Bates started running towards Waters, and when he reached him he told him to roll on the ground to put the fire out. When the fire was finally extinguished, all of Waters' clothes had burned off him. Bates said he asked Waters what happened and his only reply was he did not know. Waters was taken to Confederate Memorial Hospital in Shreveport where he died 15 days later.
Upon visiting Waters in the hospital several days after the accident, Bates again asked him what happened, and Waters again said he did not know. A review of the testimony of the various witnesses indicates that Waters was never able to explain what happened. Waters was coherent immediately after the accident and up until his death. Upon later investigation, it was found that the five gallon can had exploded, and the bottom side of the can was blown out.
Mr. Bates said that when he left the last pile to get his truck, he did not leave any instructions for Waters to pour any of the liquid on the fire or to do anything, and as far as he knew, Waters never moved the can, never had it in his possession, and he never saw Waters fooling with it.
The defendants produced an expert witness, who was a petroleum and gas engineer, and with his testimony hoped to establish that the explosion could not have taken place unless Waters had picked up the can, tilted the can forward, and allowed air to enter the can which in turn would cause an explosion. The theory presented was intriguing but very speculative and not at all conclusive. Other allegations of contributory negligence were not substantiated by the evidence.
Plaintiffs allege that Bates was guilty of negligence which was the proximate cause of the injuries and subsequent death of Cull D. Waters, in that Bates used a container partially filled with gasoline and/or gasoline fumes or vapors in close proximity to an open flame and a hot fire, by permitting same to become ignited and to explode, causing burns to Waters, and in placing a container filled with flammable and explosive substance too close to a fire and to heat and permitting same to become ignited and to explode and burn Waters. They further alleged that Bates was negligent in failing to warn Waters of the dangerous properties of the substances being used by Bates, and in failing to properly handle and use dangerous and highly explosive and flammable substance and in permitting same to ignite and explode and cause the decedent, Cull D. Waters, to be burned to such an extent as to die from said injuries.
The district court found Bates guilty of actionable negligence, which was the sole and proximate cause of the accident which injured and caused the death of Waters. *490 We find no manifest error in the findings of the lower court.
It is a well-recognized rule of law followed in this State that those who use or handle agencies, substances or instrumentalities such as explosives, electricity, fire arms, combustibles and fire works, which might endanger persons or property are held to a high degree or an extraordinary degree of care. Prescott v. Central Contracting Company, 162 La. 885, 111 So. 269 (1927); Normand v. Normand (La.App., 2 Cir., 1953), 65 So.2d 914; Holland v. St. Paul Mercury Insurance Co. (La.App., 1 Cir., 1961), 135 So.2d 145.
The gasoline can was a dangerous instrumentality, and the defendant was clearly negligent in handling it. The can did explode and cause the injuries. We are of the opinion that the doctrine of res ipsa loquitur is applicable. Tassin v. Louisiana Power & Light Company (La.App., 3 Cir., 1966), 191 So.2d 338, affirmed by the Supreme Court at 250 La. 1016, 201 So.2d 275. As in the Tassin case, the defendant here had control of a highly dangerous instrumentality. He had a very high duty of care. He breached this duty by leaving the can in a very hazardous position. It exploded and caused the injuries. The most plausible explanation for the accident is that the can exploded because it was left too near the fire. The evidence does not justify an inference that it is just as probable, or more probable, that plaintiff was pouring gas on the fire. We have reached this conclusion based on the following: (1) the deceased was not an employee and had not helped start the fires; (2) self preservation would deter a reasonable man from pouring gas on a roaring fire; (3) why pour more gas on a roaring fire? (4) after the accident the deceased was asked, and he said: "I don't know what happened." (5) the expert's testimony does not satisfy us that the most probable cause was the decedent's pouring gas on the fire.
We will next consider the item of quantum.
At the time of his death Waters was 67 years of age and had a life expectancy of 11.6 years. He earned $40.00 per month and received $134.00 from other sources, all of which terminated with his death. The award of $15,000.00 appears to be well within the discretion of the lower court.
The record indicates that Mr. and Mrs. Waters were living a peaceful, happy, satisfactory life at the time of this tragedy. The trial court awarded Mrs. Waters $12,000.00 for loss of companionship, love and affection and mental anguish. In reviewing this award, this Court considered the case of Perot v. United States Casualty Co. (La.App., 2 Cir., 1957), 98 So.2d 584, wherein the court approved an award of $25,000.00 in favor of a 66-year-old widow for the death of her 72-year-old husband. They had been married for approximately 48 years and had one child. In the instant case Mrs. Waters was born in 1919 and had been married to her deceased husband since 1939.
Waters was survived by one son, age 23 years, who was living with him at the time of his death. The lower court's award for the loss of companionship and affection of the decedent's son, Glenn Waters, in the sum of $7,500.00 appears to be in line with the award of the court in the case of Lanaux v. Marquette Casualty Company (La.App., 4 Cir., 1964), 162 So.2d 823, wherein the court awarded $7,500.00 each to decedent's 51-year-old unmarried son and a 53-year-old married son for the wrongful death of their 75-year-old father.
Counsel for plaintiffs complains that the lower court award of $15,000.00 for the pain and suffering of the decedent Waters before his death is grossly inadequate. The decedent lived fifteen days following his injury. He was conscious the entire time from the accident to his death. *491 Eighty to ninety per cent of his entire body had received second and third degree burns, which caused him severe pain and suffering. The hospital records show he was given approximately 25 to 26 hypos for pain, which included demarol, morphine, vistril and codeine.
While we think the award for pain and suffering is low, we will not disturb the award of the trial court on this item for we do not find an abuse of the large discretion vested in it. See Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149.
The award for medical expenses granted intervenor, the Confederate Medical Center, is not being contested on this appeal.
For the reasons assigned the judgment of the district court is affirmed at appellants' costs.
Affirmed.
HOOD, Judge (dissenting).
I am unable to agree with my colleagues in their conclusions that the doctrine of res ipsa loquitur should be applied here and that the decedent was free from contributory negligence.
The can of kerosene was not under Bates' control when the accident occurred. Bates, in fact, was 150 feet away from the can when it allegedly exploded. I think it is much more reasonable to conclude that the can was under the control of the decedent, who was the only person who had been in the vicinity of the can for several minutes before the accident occurred.
Neither can I agree with the majority in its conclusion that the most plausible explanation for the accident is that Bates left the can too near the fire. Although the majority refers to it as a "gasoline can," the evidence shows that it contained kerosene when the accident occurred. Bates left the can about six feet from the fire, which I do not regard as being dangerously close, but after the accident occurred the can was found on the opposite side of the fire from the place where Bates had left it. The most plausible explanation of the accident, I think, is that the decedent moved the can and allowed it to come in contact with the fire.
This was a tragic accident and I have great sympathy for the decedent and the survivors. In spite of that fact, however, I am compelled to conclude that the decedent was negligent and that his negligence was a contributing, if not the sole, cause of the accident. The decedent was 67 years of age. He was mentally competent, and it must be presumed that he knew as much about the danger of kerosene and fire as did Bates or anyone else. Bates had not been in the vicinity of the fire or the can of kerosene for several minutes. If there was a danger, then that danger should have been just as obvious to the decedent as it should have been to Bates. It seems to me that the decedent was negligent in failing to remove himself from the immediate vicinity of the fire or the can if such a danger actually was apparent. His contributory negligence should bar his heirs from recovery.
For these reasons, I respectfully dissent.
On Application for Rehearing.
En Banc. Rehearing denied.
HOOD, J., is of the opinion that a rehearing should be granted.