247 So.2d 644 (1971)
Walter E. HARKINS et al., Plaintiffs and Appellants,
v.
STATE of Louisiana, Through the Louisiana Board and/or DEPARTMENT OF HIGHWAYS, Defendant and Appellee.
No. 3371.
Court of Appeal of Louisiana, Third Circuit.
April 22, 1971.
Rehearing Denied May 26, 1971.
*646 Sandoz, Sandoz & Schiff by Leslie J. Schiff, Opelousas, for plaintiffs-appellants.
Burton, Roberts & Ward by Charles W. Roberts, Baton Rouge, for defendant-appellee.
Before FRUGÉ, SAVOY and CULPEPPER, JJ.
CULPEPPER, Judge.
This is a suit for damages arising out of an automobile accident. The plaintiff, Mr. Walter A. Harkins, was the driver of the automobile which struck a concrete bridge. His wife, Mrs. Gaynell Harkins, was a passenger. Both received serious personal injuries. Mrs. Harkins died about a month after the accident. Mr. Harkins seeks damages for his own injuries and he and four major children seek damages for the wrongful death of Mrs. Harkins. The defendant is the State of Louisiana, through the Department of Highways, whose employees are alleged to have been negligent in failing to erect adequate warning signs at the site of certain highway repairs. The district judge found the Highway Department free of any negligence which was a legal cause of the accident. Plaintiffs appealed.
The accident occurred at about noon on December 2, 1968. The weather was cloudy but dry and visibility was good. The scene is on U. S. Highway 190, about 4½ miles west of Krotz Springs. At this point the highway has four lanes, two for east bound and two for west bound traffic, separated by a wide neutral ground. The speed limit is 70 miles per hour.
On the morning of the accident, a maintenance crew for the Department of Highways repaired a soft spot in the right-hand lane for east bound traffic about 175 feet west of the concrete bridge. The work consisted of filling an area about five feet square with "hot mix", which required two or three hours to harden. While this work was in progress, the crew placed a "ROAD WORK AHEAD" sign about 2,000 feet and a "MEN WORKING" sign about 1,000 feet west of the repair site. Each sign was diamond shaped and 30" × 30". They were attached to stands 46 inches high so that the bottoms of the signs were about 12 inches above ground level. The signs were positioned on the right-hand shoulder facing east bound traffic. In addition, a flagman with a "STOP AND SLOW" sign directed traffic. Also, a dump truck, on which was mounted a "MEN WORKING" sign and a blinking red light, was parked in the right hand lane near the repair area.
The work was completed about 10:00 a. m. When the crew departed the only warning devices left were the two above described signs 1,000 feet and 2,000 feet west of the repair site and a barricade across the right-hand lane a short distance west of the soft "hot mix". This barricade is 3½ feet tall and is constructed of a 2" × 8" board, 12 feet in length and supported on each end by an A-frame. The board is painted with black and white stripes and in the center is a sign on which is painted an arrow with the words "ONEWAY". No signs were left to give specific warning of a barricade or that a lane was closed or at what distance the repair work should be anticipated.
Between the time the repair crew left at about 10:00 a. m. and the time of the accident at about 12 o'clock noon, an unknown motorist struck the barricade and knocked it down onto the highway. State *647 Trooper Jerry Quebedeaux testified it was reported to him by the Krotz Springs city marshal that the barricade had been knocked down and the marshal was en route to "check it out" when the Harkins accident happened. Mr. Harold Fontenot, foreman of the repair crew, testified he received word from the Krotz Springs police that someone had hit the barricade and he went to the scene but did not arrive until 1:00 p. m. By that time another highway crew had already picked up the pieces of the barricade and the signs.
At about noon, Mr. Harkins was driving his automobile in an easterly direction at a speed of about 60 miles per hour. He gave conflicting versions of the accident. In his original petition and in a pretrial deposition, Harkins stated that as he approached the scene he was traveling in the right-hand east bound lane and came upon slower moving traffic in that lane. He said he turned into the left-hand lane and passed three cars and was still in the left lane when his wife suddenly said "There's a barricade." He stated that at about the same time he saw the barricade in the left-hand lane, but it was not across the lane. Instead, it was parallel to the center line. Harkins said he immediately applied his brakes but struck the barricade and then lost control of his vehicle and ran into the concrete bridge on the left side of the highway.
Later, Harkins filed a supplemental petition in which he gave the version of the accident to which he testified at the trial. Harkins says that after he saw certain pictures taken by the state police showing his skidmarks starting in the right-hand lane and after he learned that an eyewitness, Mr. James F. Hopson, was going to testify that Harkins was in the righthand lane when he reached the repair site, he realized that his original impression of the facts was erroneous. At any rate, he testified at the trial that as he approached the scene he was in the right-hand lane. He does not mention passing any other vehicles. As to the barricade, Harkins testified that his wife saw it first and said "There's a barricade." At about the same time he saw the object but recognized it only as something sticking up in the road about three feet high. He did not recognize it as a barricade. In any event, he immediately applied his brakes and tried to turn to the left but struck the barricade and then lost control of his vehicle and struck the bridge abutment. The right front of his automobile struck the corner of the bridge and then the rear swung around and the automobile came to rest near the center of the highway about 50 feet onto the bridge.
Under both his versions of the accident Harkins says he did not see the signs 2,000 feet and 1,000 feet west of the barricade.
Mr. Jerry Quebedeaux, the state trooper who investigated the accident, testified as to certain physical facts. He says that the Harkins vehicle left skidmarks beginning in the right-hand lane at the repair site and going to the left across the left lane a distance of 165 feet to the bridge. The trooper testified that when he arrived he saw members of the highway department crew picking up pieces of the barricade and placing them in a truck. He also testified that he saw the two warning signs on the right-hand shoulder west of the repair site.
Mr. James F. Hopson testified that he was driving in an easterly direction in the left-hand lane about 150 yards behind Harkins, who was in the right-hand lane and that both were going about 60 miles per hour. Hopson also saw no warning signs. He didn't even see the barricade. He says that the Harkins vehicle suddenly swerved to the left and struck the bridge on the left-hand side. Hopson stopped near the bridge and went to the aid of the injured couple.
The first issue is the sufficiency of the warning signs and the barricade left by the defendant's repair crew. The Louisiana Highway Regulatory Act provides *648 that the Department of Highways shall adopt a manual giving specifications for a uniform system of traffic control devices, to be used by both the state and local authorities where appropriate, LSA-R.S. 32:235. A copy of the Department's "Manual on Uniform Traffic Control Devices" is filed in evidence. With regard to warning signs in general the manual states at page 157:
"Warning signs are the most important type of signs used to protect traffic, equipment and workmen where road construction or maintenance operations are underway. If drivers are properly alerted to possible dangers ahead and so reduce their speed to meet the anticipated hazards, they will be able to deal with whatever special conditions are present."
The manual contains the following instructions regarding warning signs for highway construction or maintenance at page 157:
"Where major construction or maintenance is under way on a highway and any part of the roadway is obstructed or closed, it is necessary to give special advance warning, and for this purpose a series of Construction Approach Warning signs is provided. These signs are for the purpose of alerting traffic, well in advance, to serious obstructions or restrictions due to road work. In rural areas, there may be at least three such signs, at 500, 1,000 and 1,500 feet in advance of the point of restriction.
"All advance warning signs shall be diamond shaped, 48 by 48 inches in size. They shall be mounted on two posts from 6 to 12 feet from the pavement edge or on wing barricades."
The manual also requires at page 142 that all roadside signs should be mounted so that the bottom of the sign is approximately five feet above pavement level.
Under the provisions of the manual, the barricade described above is in "Class II", which may be used to close part of a roadway. The manual states that it is desirable to also use a line of cones to guide traffic around the barricade.
It is obvious that the repair crew in this case did not use the warning signs and cones recommended by the manual. However, the defendant contends this does not necessarily lead to the conclusion that the crew was negligent. We agree that the manual is merely persuasive. The failure to comply with its requirements is not negligence per se, as in a case of violation of a highway safety statute, Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962). Hence, in determining whether the repair crew was negligent we must also look to the jurisprudence which has established the duty of the Highway Department to provide adequate warning of hazards in the highway.
In Christ v. State, Department of Highways, 161 So.2d 322 (3rd Cir. 1964), writ of certiorari refused, 246 La. 82, 163 So.2d 358, the defendant had excavated a portion of the highway and placed a barricade across one of the two traffic lanes. There were no prewarning signs but there was a pot-type kerosene flare near the shoulder in front of the barricade. The speed limit was 60 miles per hour. The accident occurred during hours of darkness. We held the warnings were insufficient and stated the law as follows:
"No hard and fast rule can be laid down as to the type of warning or barricade that should be erected by the highway authority to warn motorists of a hazard in the highway, but where a barricade or warning is necessary for the protection of motorists it should be of such size or nature as is commensurate with the danger. Reeves v. State, La.App. 2 Cir., 80 So.2d 206 (certiorari granted to consider other issues: see 228 La. 653, 83 So.2d 889 and 232 La. 116, 94 So.2d 1); Rosier v. State, La.App. 2 Cir., 50 So.2d 31."

*649 * * * * * *
"Also, in 60 C.J.S. Motor Vehicles § 192, page 530, it is stated:
"`* * * In determining what is reasonable warning, the place at which the danger exists, the nature of the road, and the general situation and circumstances surrounding it are to be taken into consideration, as are also the kind of travel and the speed at which vehicles will probably travel on the road. * * *'
"(4) Aside from the dimness of the flares and the obscurity of the barricade constituting insufficient warning of the obstruction to traffic created by the road excavation, we think that most culpable is the failure under the circumstances to set out pre-warning flares or signals at a reasonable distance in advance of the obstruction, in order to alert oncoming traffic to slow their approach to this hazardous obstruction to passage on this through highway."
See also Hall v. State, Department of Highways, 213 So.2d 169 (3rd Cir. 1968) and the authorities cited for the duty of the State to erect warning signs.
We ultimately conclude that the two signs and the barricade were not sufficient to give reasonable warning under the circumstances of the present case. The hazard created by the barricade was great. This is a four-lane highway on which the speed limit is 70 miles per hour. Prewarning signs of sufficient size and nature to alert the ordinary reasonable driver on such a highway should have been placed to give adequate warning of the barricade. These signs were only 30" × 30", whereas the manual requires them to be 48" × 48". The bottoms of these diamond shaped signs were only about 12 inches from pavement level, whereas the manual requires them to be five feet. There were only two signs and the manual recommends four. However, even if we were to say that the ordinary driver should have seen the signs, the words printed on them did not alert the motorist to the nature of the hazard. The sign approximately 2,000 feet west of the barricade read "ROAD WORK AHEAD". It did not give the distance at which the road work should have been anticipated. Also, the road work could have been on the shoulder or the main traveled portion of the highway. The next sign read "MEN WORKING" and was 1,000 feet west of the repair site. It also gave no distance at which the motorist should have looked for such a hazard. Here again, the men could have been working on the shoulder or on the pavement. Of course, each case depends on its own facts but under the circumstances present here the signs were inadequate.
The next issue is whether Harkins was contributorily negligent. As stated above, he testified that he was driving in the right-hand lane at a speed of about 60 miles per hour and did not see either of the two signs on the shoulder. By this time, the barricade had been knocked down by some unknown motorist. This means that the black and white striped board on top of the barricade was laying flat on the pavement and the only things sticking up above pavement level were the legs of the A-frames. Harkins testified that his wife suddenly said "There's a barricade." He says that at about the same time he saw something sticking up in the highway but did not at the time recognize it as a fallen barricade. He immediately applied his brakes and his skidmarks started at the repair site and went to the left a distance of about 165 feet to the concrete bridge.
Under the circumstances, Harkins was not negligent. On this four-lane highway where the speed limit is 70 miles per hour a motorist has a right to assume, in the absence of reasonable warning, that there are no barricades or other dangerous obstructions to ordinary travel. The prewarning signs were not adequate to give reasonable warning. It may be that had the barricade been up Harkins should have seen it in time to avoid the accident. However, the barricade was not up. It was *650 down on the pavement and was very difficult to see.
Defendant contends it is immaterial that the two warning signs were not in accordance with the manual, since Mr. Harkins did not see the signs. Of course, whether Harkins would have seen the signs if they had been of the proper size, height, number and wording is a matter of conjecture. The fact is that the signs were inadequate and that they were not seen by Harkins. However, even assuming that Harkins saw the sign at 2,000 feet reading "ROAD WORK AHEAD" and a sign at 1,000 feet reading "MEN WORKING", we do not think that on this type of highway this would have been adequate warning to impose on Harkins the duty to watch for anything so difficult to see as the fallen barricade. As stated above, the signs did not warn of a barricade or a lane being closed and did not give the distance at which the hazard should have been anticipated. If Harkins had seen the signs he perhaps should have begun to watch for road work or for men working, either on the road or the shoulders, but the hazard which he actually encountered was neither of these. It was a hazard for which he was not alerted by the prewarning signs.
Applicable to the issue of Harkins' contributory negligence is the jurisprudence that a motorist is not required to guard against striking an unexpected or unusual obstruction which he could not reasonably anticipate would be encountered on the highway, Vowell v. Manufacturers Casualty Insurance Company, 229 La. 798, 86 So. 2d 909; Goodwin v. Department of Highways, La.App., 53 So.2d 161; Carlisle v. Parish of East Baton Rouge, La.App., 114 So.2d 62; Pierrotti v. Louisiana Department of Highways, La.App., 146 So.2d 455; Rosier v. State, 50 So.2d 31; Kilpatrick v. State Dept. of Highways, La.App., 154 So. 2d 439; Davis v. Department of Highways, La.App., 68 So.2d 263. Defendant contends all of these cases are distinguished on the grounds that the accidents involved occurred during hours of darkness. Of course, each case depends upon its own facts, but we think the principle of law enunciated in the cited jurisprudence is applicable here. This accident occurred during daylight but the obstruction was highly unusual and unexpected and very difficult to see at speeds of 60 to 70 miles per hour in time to avoid an accident.
Having found the defendant was negligent and that Mr. Harkins was free of contributory negligence, we next consider the question of causation. The issue here is whether the negligence of defendant's repair crew in failing to provide adequate signs was a substantial cause in fact of the accident, Dixie Drive It Yourself System v. American Beverage Company, 242 La. 471, 137 So.2d 298 (1962); Pierre v. Allstate Insurance Company, 257 La. 471, 242 So.2d 821 (1971). Under the evidence, we cannot say that the Highway Department was negligent in failing to take reasonable steps to replace the barricade after receiving word that it had been knocked down by some unknown motorist. It may be that if the barricade had been up Harkins would have seen it in time. But this is a matter of conjecture. The fact is that it was not up and Harkins did not see it in time to avoid the accident. A contributing cause of Harkins' failure to anticipate and see the fallen barricade was the inadequacy of the prewarning signs. Hence, this negligence of the defendant was a substantial cause in fact of the accident.
Having concluded that the defendant was negligent and that this negligence was a substantial cause in fact of the accident, a further question is whether the defendant should be legally responsible for the damages sustained. See Dixie Drive It Yourself System v. American Beverage Company, supra; Todd v. Aetna Casualty & Surety Company, 219 So.2d 538 (La.App. 3rd Cir. 1969); Malone, Studies in Louisiana Tort Law, 175-177; Prosser, Law of Torts (3d Ed. 1964), Section 49, pages 282-283. In the present case, this question can be answered by inquiring whether the duty breached by the defendant had as a *651 purpose protection against the injury which actually occurred. Clearly it did. The purpose of the duty imposed upon the Highway Department to provide adequate signs and warnings of unusual hazards is to protect against drivers not observing these hazards in time to avoid an accident. The accident which occurred in this case is of the type sought to be protected against by the duty to give adequate warning.
We now address ourselves to the issue of the quantum of the awards. First, we will consider the award to Mr. Harkins and the four major children for the wrongful death of Mrs. Harkins. She lived for about one month after the accident and suffered great pain. Dr. Lloyd Boulet described her injuries as follows:
"Well, Mrs. Harkins was foundthe most outstanding thing was a large laceration of the left eye which was bleeding profusely and cheek, then she also by x-ray diagnosis, as a result of the examination, was found to have a fracture of the left acetabulum, that is, the socket of the hip. Then she had athese are x-ray findings, a comminuted fracture of the left distal radius. She had fractures of the transverse processes of the second and third lumbar vertebra with narrowing of the fifth lumbar and first sacral interspace, that is, the areas between the vertebrae themselves, and these were the initial findings."
On about the ninth day after the accident, Mrs. Harkins began to develop a gangrenous infection over the left knee. The left leg was surgically amputated. Then the infection appeared in the right leg which was also amputated. Dr. Boulet testified that she had demerol for pain every four hours throughout the entire month she survived, but she was conscious much of the time and suffered considerably. We think an award of $10,000 for the pain and suffering of Mrs. Harkins during the one month period between injury and death is appropriate. See Waters v. Southern Farm Bureau Casualty Insurance Company, La.App., 212 So.2d 487; Soileau v. Continental Insurance Company, La.App., 228 So.2d 522; Richard v. American Oil Company, La.App., 213 So.2d 158.
Mr. Harkins is entitled to an award for loss of love and affection of his deceased wife. The facts show that at the time of her death Mrs. Harkins was 62 years of age and Mr. Harkins 69 years. They had lived together for many years and raised a family consisting of four major children and a number of grandchildren. Mr. Harkins is a retired coal miner and he and his wife spent a great deal of time together visiting their children. Under the circumstances, we think Mr. Harkins is entitled to an award of $20,000 for loss of love and companionship. See Soileau v. Continental Insurance Company, supra, and the authorities cited therein.
Under the facts set out above, the major children are each entitled to an award of $7,500 each for loss of love and affection of their deceased mother. Again see Soileau v. Continental Insurance Company, supra, and the cases cited therein.
We pass now to the claim of Mr. Harkins for his own personal injuries. Dr. Boulet, the initial attending physician, diagnosed the injuries as follows:
"Well, the most stand-out injury, of course, was large laceration of the back part of his head which was bleeding profusely, although it didn't appear, it wasn't the most serious injury he had, it appeared to be the most serious, certainly, with a large flap in the back of his head that really didn't requirejust a simple laceration and stopping of the bleeding, then later on, he was found to have aalso compression fractures of the first lumbar and third lumbar and he had, of course, he was brought in on a stretcher, and later on it was found that he had severe damage to the left knee and he had a fracture of one of the bones of the foot, a simple fracture, he hadI have a fracture of the clavicle, actually it was *652 a sternoclavicular dislocation, in other words, the clavicle and the sternum had jumped out of its usual position and he also developed a paralytic bowel as a result of the shock injuries, but he required very little care and he was able to be treated without tubes, and he also had a fracture of the 7th rib, and I think the 8th rib also.
The accident occurred on December 2, 1968, and by December 13, Mr. Harkins had sufficiently recovered from shock that he was taken into surgery and the damage to his knee was repaired. On January 1, he was discharged from the hospital with a cast on the left leg and a short cast on the right leg. He also used a corset for support of his back. Harkins was transferred to the care of an orthopedic surgeon in Birmingham, Alabama, where his home is located. This physician estimates a 30 to 35 per cent permanent impairment of his body as a whole. Of course, he still has pain and discomfort due to the back and knee injuries, but is able to walk and get about. Under the circumstances, we think an award of $25,000 is appropriate.
Mr. Harkins is also entitled to recover the medical expense for Mrs. Harkins in the sum of $7,387.94 and his own medical expense in the sum of $2,644.39, or a total of $10,032.33 in medical expense.
Summarizing, the awards to Mr. Harkins are as follows:

1) Personal injuries ........ $25,000.00
2) Loss of love and affection
 of his deceased wife ..... 20,000.00
3) One-half of the award for
 pain and suffering of
 Mrs. Harkins before her
 death .................... 5,000.00
4) Medical expense for both
 Mr. & Mrs. Harkins ....... 10,032.33
 __________
 TOTAL ......... $60,032.33

The four major children, Walter W. Harkins, Martha Sue Harkins Warner, Carolyn Gray Harkins Smith and Richard Allen Harkins are each entitled to $7,500 for loss of love and affection of their deceased mother, plus one-eighth of the award for their mother's pain and suffering prior to death (one-eighth of $10,000 is $1,250) for a total of $8,750 to each major child.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein in favor of the plaintiff, Walter A. Harkins, in the sum of $60,032.33 and in favor of each of the remaining plaintiffs, Walter W. Harkins, Martha Sue Harkins Warner, Carolyn Gray Harkins Smith and Richard Allen Harkins, in the sum of $8,750 against the defendant, State of Louisiana, through the Department of Highways, together with legal interest thereon from date judicial demand until paid, and all costs of these proceedings.
Reversed and rendered.