293 So.2d 645 (1974)
Irene Frank MILTON et al.
v.
STATE of Louisiana (The Louisiana HEALTH AND SOCIAL AND REHABILITATION SERVICES ADMINISTRATION).
No. 9791.
Court of Appeal of Louisiana, First Circuit.
April 22, 1974.
*646 John L. Olivier, Sunset, for appellants.
Howard P. Elliott, Jr., Baton Rouge, for appellee.
Before LOTTINGER, BLANCHE and de la HOUSSAYE, JJ.
de la HOUSSAYE, Judge.
This is a suit for the wrongful death of Livingston Milton who was the husband of Irene Frank and father of the fourteen (14) other plaintiffs.
Plaintiffs allege, and it is not denied, that Livingston Milton was admitted on or about February 13, 1967, to the Central Louisiana State Hospital, Pineville, Louisiana, pursuant to the committment approval executed by Judge Joseph A. LaHaye of the 27th Judicial District Court of St. Landry Parish. On or about April 28, 1969, Milton allegedly wandered away from the dormitory where he was quartered and subsequently was found dead on May 16, 1969, on the hospital grounds.
Plaintiffs allege that Milton's death was proximately caused by the negligence of the agents, servants, staff and/or employees of Central Louisiana State Hospital because Milton had a history of wandering off due to his mental disorder and the agents of the hospital were aware of this disorder.
Plaintiffs further allege that Milton was left unattended under circumstances that would put a reasonable man on notice that a patient with Milton's tendency to wander would in fact result in his leaving the premises. Once Milton was discovered missing, plaintiffs contend that the employees of the hospital failed to properly conduct and continually search for Milton resulting in his exposure to the natural elements which caused his death.
In the alternative, plaintiffs argued that if they were not able to show the acts of negligence which resulted in Milton's death, then the court should apply the doctrine of res ipsa loquitur.
Defendants, (The Louisiana Health and Social and Rehabilitation Services Administration) filed an answer in the form of a general denial and also alleged contributory negligence. A subsequent supplemental and amending answer was filed by defendants whereby they assumed the position of plaintiff in reconvention alleging that the decedent having been a patient at Central Louisiana State Hospital in Pineville, Louisiana, from the dates of February ___, 1967, intermittently through May 1, 1969, had paid nothing for his room, board, and other medical services and as a result was indebted to defendants in the amount of $3,126.11 with legal interest from date of demand.
Plaintiffs answer the reconventional demand with a general denial.
At the trial on the merits, the trial court dismissed plaintiffs' suit at their costs stating that while a hospital may be liable to a patient or its family for the results of the want of ordinary care whether the failure *647 to exercise such care is due to incompetence or nonperformance of duty by the employee, the hospital is not the absolute insurer of its patients' safety. The trial court further stated that it did not believe that the hospital was negligent in its duty to care for the patient even though it found that "the hospital did not employ supervisory measures by its personnel sufficient to closely monitor the whereabouts of its patients ..."
The district judge correctly dismissed the defendant's argument of contributory negligence on the part of the decedent and rendered no judgment concerning defendant's reconventional demand. Defendant does not assign as error either of the above findings. It is further noted that the trial court did not discuss the doctrine of res ipsa loquitur whatsoever in its reasons for judgment.
We disagree with the trial court in part and find defendant liable to plaintiffs for the following reasons.
While the lower court properly did not grant recovery under a general concept of negligence, the circumstances of this case lead us to believe that recovery should have been allowed under the theory of res ipsa loquitur.
We agree that a hospital is not the insurer of it's patient's safety, but feel that there is a duty to care for a patient as the patient's known condition may require. As stated in the case of Meynier v. DePaul Hospital, 218 So.2d 98 (La.App. 4th Cir. 1969), "The hospital is liable for the results of the want of ordinary care whether the failure to exercise such care is due to incompetence or nonperformance of duty by the employee. This extends to safeguarding the patient from dangers due to mental and physical incapacity." (Emphasis added.)
A reading of the transcript makes it apparent that Milton was supposed to be kept in quarters which were locked when the patients were not under personal surveillance. The testimony of Mrs. Rasberry, the head nurse of Milton's unit, indicates that Milton was in Ward 22 because he was physically infirm (he had an ulcer on his leg) and also because this ward was designated for the use of patients who had a tendency to elope.
Throughout the testimony, it is also acknowledged by the persons who came into direct contact with Milton that they knew or should have known of Milton's tendency to elope.
Curtis Wiggins, a Psychiatric Aide I at the hospital, specifically testified that on at least one occasion he can recall that Milton wandered off but was found within a few minutes.
During his time at the hospital, Milton was allowed to visit his home where his wife was forced to keep him under constant surveillance because of his tendency to wander off. It must be presumed then that the hospital had special knowledge of Milton's tendency to elope and therefore had the duty to care for Milton as his condition required.
Once Milton was discovered missing, the security chief was notified and a search was organized that day. The testimony shows that this was not a search conducted by people accustomed to searching for another human but rather by a loose organization of employees there at the hospital. This official search lasted one day. Thereafter, the testimony indicates that several individuals working at the hospital would periodically search random areas for Milton. At no time was outside help requested.
While we cannot ascertain the deceased's activities between the date of his elopement and subsequent death on the hospital grounds, it can logically be inferred that the defendant's hospital through its agents *648 possessed special knowledge of Milton's condition and failed to properly carry out its obligation to safeguard the deceased.
It is true that plaintiffs could not show that defendant's negligence caused Milton's death, but this is not necessary under a theory of res ipsa loquitur. It is a rule of circumstantial evidence used when the facts shown suggest that negligence of the defendant as the most plausible explanation of the injury. McCann v. Baton Rouge General Hospital et al., La., 276 So.2d 259, 261 (1973); Gage v. St. Paul Fire & Marine Insurance Company, 282 So.2d 147, 153 (La.App. 3rd Cir. 1973).
The general doctrine of res ipsa loquitur as applied by our jurisprudence is well stated in Bauer v. Columbia Casualty, 126 So.2d 398 (La.App. 2nd Cir. 1961) where the court held that the essentials of the doctrine were:
(1) A superior knowledge on the part of the defendant as to the cause of the accident;
(2) The absence of unavailability of direct evidence of negligence;
(3) The existence of a sufficient duty on the part of the defendant to use due care; and
(4) Proof of the accident or injury and defendant's relation thereo. Ibid. at p. 401.
The Court also stated the rule that
"The doctrine is that when a thing which causes injury without fault of the injured person is shown to be under the exclusive management or control of a defendant, and the injury as such, in the ordinary course of things, does not occur, if the one having such management or control uses proper care, then the injury is presumed to have arisen from the defendant's want of care." 126 So.2d 400.
We feel that all of the requirements necessary to apply res ipsa loquitur are present here.
The facts of this case indicate that Milton's death occurred within the confines of the hospital, and that the surrounding circumstances are peculiarly within the knowledge of defendant. Furthermore, there is no direct evidence available to explain what led to Milton's death, while there is evidence showing that defendant was negligent in looking after the deceased's well being.
We have already established that a hospital must exercise such care as is due to a patient as his known condition requires. Meynier, supra. There is unquestionably the existence of a sufficient duty on the part of the defendant to use due care and this duty was not fulfilled as is evidenced by Milton's elopement. Furthermore, defendant's relation to the decedent's demise is obvious since Milton was under the special supervision of Central Louisiana State Hospital and died there on the hospital grounds.
This court is well aware of the concept that res ipsa loquitur does not modify the rule that negligence will not be presumed. Larkin v. State Farm Mutual Automobile Insurance Company, 233 La. 544, 97 So.2d 389 (1957).
"[It] does not dispense with the necessity that the plaintiff prove negligence, but is simply a step in the process of such proof, permitting the plaintiff, in a proper case, to place in the scales, along with proof of the accident and enough of the attending circumstances to invoke the rule, an inference of negligence, thereby obtaining an advantage and placing on the defendant the burden of going forward with proof to offset that advantage."
97 So.2d at 389.
*649 This inference of negligence is drawn when all of the surrounding circumstances are of such a character that "unless an explanation can be given, the only fair and reasonable conclusion is that the accident was due to some omission of the defendant's duty." Ibid.
"In other jurisdictions, it has been held that a hospital must exercise more than the average degree of care where the hospital knows of the mental condition of the patient and the escapist intent or proclivities of the patient. Such would be true regardless of the description of such duty as "ordinary care" or "reasonable care under the circumstances."
Such was held in Shattuck v. State, 166 Misc. 271, 2 N.Y.S.2d 353 (Ct.Cl.1938), in which a mental patient on his second successful escape from the institution lost both of his legs due to exposure and frostbite. The plaintiff escaped due to lax supervision. In holding the hospital liable, the court ruled that:
"Public or private institutions maintained for the care of those unfortunates suffering from mental or nervous defects or diseases have imposed upon them the legal duty of taking every reasonable precaution to protect their patients from injury either self-inflicted or otherwise." 2 N.Y.S.2d at 355.
A similar ruling involving similar facts was handed down in the leading case of Mounds Park Hospital v. Von Eye, 245 F. 2d 756 (8th Cir. 1957), in which the court held that a hospital:
"(O)wes its patients the duty of protection and must exercise such reasonable care toward a patient as his known condition may require and the duty of care imposed on a hospital extends to safeguarding the patients from dangers due to mental incapacity where that mental incapacity is known or by the exercise of ordinary care ought to have been known."
245 F.2d at 759 (citations omitted). Accord. Wood v. Samaritan Institution Inc., 26 Cal.2d 847, 161 P.2d 556 (1945); Maki v. Murray Hospital, 91 Mont. 251, 7 P.2d 228 (1932); Spivey v. St. Thomas Hospital, 31 Tenn.App. 12, 211 S.W.2d 450 (1947); Callahan v. State, 179 Misc. 781, 40 N.Y.S.2d 109 (Ct.Cl.1943); Burtman v. State, 188 Misc. 153, 67 N.Y.S.2d 271 (Ct. Cl.1947); Annot., "Liability of Hospital or Sanitarium for Injury or Death of Patient As a Result of His Escape or Attempted Escape", 70 A.L.R.2d 347 (1960).
We feel that the evidence as presented preponderates in favor of plaintiffs. All of the circumstances surrounding Milton's elopement and subsequent death lead us to the conclusion that there was an omission of defendant's duty to maintain Milton in a locked dormitory specially designated for the infirm.
Negligence on the part of the defendant can certainly be inferred here where testimony by the hospital's employees clearly shows that there existed a duty of care which was governed by the special knowledge possessed only by the members of this hospital, and that Milton was allowed to wander away in spite of this knowledge of his propensity to elope.
Having reversed the lower court, we now turn to a discussion of the quantum of damages allowable in a case of this nature.
The record obviously indicates that the deceased and his family were not living together at the time of his demise, but nonetheless there would have existed love and affection within plaintiffs' family even though the decedent was absent from home at the time of his death.
There seems to have existed a normal family relationship when Milton was home and his wife made frequent visits to see him in the hospital. Several of the children would accompany their mother on these trips. Testimony of three of the children indicated close ties with their father *650 and defendant's counsel stipulated that the remaining seven children present would have testified along the same lines. The remaining four children were unable to be present due to illness or distance, but no doubt would have testified the same as their brothers and sisters.
Awards to a surviving spouse for loss of love and affection and support based on the wrongful death of a person between the ages of 62 and 69 have varied from $12,000.00 to $20,000.00. Harkins v. State Dept. of Highways, 247 So.2d 644 (La. App. 3rd Cir. 1971) writs refused, 259 La. 741, 252 So.2d 449 (1971); Soileau v. Continental Insurance Co., 228 So.2d 522 (La. App. 3rd Cir. 1969) writs refused 255 La. 280, 230 So.2d 587 (1970); Waters v. Southern Farm Bureau Casualty Insurance Co., 212 So.2d 487 (La.App. 3rd Cir. 1968) writs refused, 252 La. 900, 214 So.2d 720 (1968).
Awards to children for loss of love and affection based on the wrongful death of a parent between the ages of 62 and 86 years of age range between $5,000.00 and $7,500.00. Harkins, supra; Crockett v. United States Fidelity and Guaranty Co., 229 So. 2d 169 (La.App. 1st Cir. 1969) writs refused 255 La. 286, 230 So.2d 589 (1970); and Soileau, supra.
No support can be claimed by any of the plaintiffs since the deceased was not providing any support at the time of his death.

Accordingly, we award damages to plaintiffs as follows:
(1) Mrs. Irene Frank Milton, for loss of love and affection. ... $12,000.00
(2) Joseph Livingston Milton, for loss of love and affection. ... 5,000.00
(3) Sylvester Milton, for loss of love and affection. ... 5,000.00
(4) Patrick Milton, for loss of love and affection. ... 5,000.00
(5) Lawrence Milton, for loss of love and affection. ... 5,000.00
(6) Theresa Ruth Milton Guillory, for loss of love and affection. ... 5,000.00
(7) John Lloyd Milton, for loss of love and affection. ... 5,000.00
(8) Daniel J. Milton, for loss of love and affection. ... 5,000.00
(9) Paul Olen Milton, for loss of love and affection. ... 5,000.00
(10) Irene Marie Milton Smith, for loss of love and affection. ... 5,000.00
(11) Emma Lee Milton Chevis, for loss of love and affection. ... 5,000.00
(12) Madeline Sophie Milton, for loss of love and affection. ... 5,000.00
(13) Judy Ann Milton, for loss of love and affection. ... 5,000.00
(14) Donald Ignatius Milton, for loss of love and affection. ... 5,000.00
(15) Carroll James Milton, for loss of love and affection. ... 5,000.00

Judgment will also be awarded to appellant, Irene Frank Milton, for the sum of $549.40 for funeral expenses for the decedent, as stipulated.
*651 For these reasons, the Judgment of the trial court is reversed, and Judgment is rendered in favor of each appellant in the amounts herein indicated.
Costs of this appeal are assessed against Appellee, as provided for by law.
Reversed and rendered.