SAVOY, Judge.
This case and the companion case of Fireman’s Fund Insurance Company v. Odell Vinson Oil Field Contractors, Inc. et ah, 234 So.2d 541 (La.App. 3 Cir.1970), arose out of a multiple vehicle accident which occurred August 5, 1968, on State Highway 27 about two miles north of Hackberry. Prior to the accident three vehicles were proceeding northerly along the highway. The _ lead vehicle was a 1968 Chevrolet winch truck owned by defendant, Odell Vinson Oil Field Contractors, Inc. This truck was being driven by James E. Broussard in the course and scope of his employment with said corporation, and it was insured by defendant, Travelers Insurance Company. The second vehicle was a 1967 Ford pickup truck owned by R. E. Heidt Construction Company, and being driven by Vowell H. Miller in the course and scope of his employment with Heidt. The plaintiff, Freddie Gloston, and two other Heidt employees were passengers in the 1967 pickup truck. The third vehicle was a 1966 Dodge automobile leased by defendant, Milchem, Inc., and being driven by its employee, Donald L. Brown. This car was insured by defendant, Fidelity and Casualty Company of New York. The accident occurred when the lead winch truck began a left turn to enter a private drive leading to some oil wells and a tank battery on the west side of the highway. At this time the car was passing the two forward vehicles. The left front of the winch truck collided with the right rear portion of the car. Then, the following pickup truck ran into the rear portion of the winch truck.
Plaintiff in this suit, Gloston, sued for personal injuries and damages. Fireman’s Fund Insurance Company intervened to recover all sums paid plaintiff under a workmen’s compensation policy covering the employees of Milchem, Inc.
In the companion case, Fireman’s Fund Insurance Company sued Milchem, Inc., Fidelity and Casualty Company of New York, Odell Vinson Oil Field Contractors, Inc. and Travelers Insurance Company on its subrogation claims for workmen’s compensation benefits paid to the other employees of Heidt Construction Company who were riding in the pickup truck, namely, Vowell N. Miller and Walter Reed; and also for the collision loss paid on the pickup truck.
The cases were consolidated for trial. After trial on the merits, the district court found that the driver of the car, Donald L. Brown, was free of fault, and that the accident and resulting injuries and damages were caused proximately by negligence of both James E. Broussard and Vowell N. Miller. Judgment was entered in favor of plaintiff for $8,923.98, plus interest and costs, against Odell Vinson Oil Field Contractors, Inc. and the Travelers Insurance Company, in solido, subject to the claim of the intervenor. Intervenor, Fireman’s Fund Insurance Company, was granted judgment for $2,343.98 being the amount paid plaintiff in workmen’s compensation and medical benefits. All claims against Milchem, Inc. and its insurer were rejected.
In the companion case, the subrogation claims for the collision loss to the pickup truck and the benefits paid to Vowell N. Miller under the Louisiana Workmen’s Compensation Act were denied, but judgment was entered for plaintiff for the sum of $9.38 paid to the other passenger, Walter Reed, in workmen’s compensation benefits.
Appeals to this Court were filed by Odell Vinson Oil Field Contractors, Inc. and Travelers Insurance Company in both cases. Gloston, plaintiff herein, filed an appeal in this case. Fireman’s Fund Insurance Company filed appeals in both this case and the companion case.
The record shows that the accident occurred about 2:00 P.M. on August 5, 1968, on State Highway 27 about two miles north of Hackberry in Calcasieu Parish. *537 The highway is paved, is straight and level in the area involved, and the speed limit is 60 miles an hour. The accident occurred near a private shell road to some oil wells and a tank battery on the west side of the highway. The road was dry, and the sun was shining.
As he approached the private road where he intended to turn, Broussard gradually reduced the speed of the winch truck to about 20 to 25 miles per hour. At this time, Miller, who was driving the following pickup truck some distance behind reduced his speed to about 35 to 45 miles per hour. The driver of the Milchem vehicle, Brown, passed the Heidt pickup and continued in the left lane in an attempt to pass the lead winch truck. As the car neared the winch truck, the truck began a left turn, and Brown attempted to get around by speeding up and taking partly to the shoulder of the road, but the right rear side of the car clipped the left front portion of the winch truck. The winch truck came to an immediate stop almost upon impact, with the rear portion of the truck blocking about half of the northbound lane of the highway. The Heidt truck then skid a distance of about 87 feet, striking the rear portion of the winch truck.
The state trooper who investigated the accident testified as to the statements given him following the accident as shown on his report. He testified that Brown stated he was going about 50 to 55 miles per hour; that he sounded his horn before passing the pickup; and he sounded his horn again as he approached the winch truck. He stated he didn’t know if he saw a flash of a brake or signal light on the winch truck or whether it was a reflection of the sun just as the truck began a left turn. In any event, he was too close to stop at that time and tried to avoid an accident by speeding up and pulling partly off on the left shoulder of the road. The trooper testified that Broussard stated he looked in his rear view mirror and saw a pickup truck and a vehicle behind him; that he put on his signal light about one block from his turn; that when he got ready to turn, he made the turn without looking back or in his mirror again. Then, when the car clipped the front of his truck, he stopped immediately as he said he was supposed to do after an accident. The trooper testified that Miller stated he was following the winch truck at a speed of about 45 miles per hour; he saw the car passing him; and, when he saw the forward truck began a left turn, he applied his brakes but was unable to stop the pickup truck before it collided with the forward truck. The state trooper further testified that the driver and passengers of the pickup truck confirmed Brown’s statement that he blew his horn before he passed them and again as he approached the lead winch truck. At the trial at least two of the four occupants of the pickup failed to recall the sounding of the horn.
The trooper found skid marks left by the pickup truck which he stopped off and estimated to be 87 feet in length. He also noted the tire marks of the car which went partly on the left shoulder as it passed the winch truck. After the car collided with the winch truck, it continued and struck another vehicle not involved in this suit which was parked on the west side of the highway beyond the private road. The trooper estimated the speed of the car at 55 miles per hour.
At the trial, Brown was out of the country, and his written statement was admitted in evidence by stipulation. His statement was substantially as stated above by the state trooper.
Miller testified he followed the winch truck at a distance of about 200 feet without intending to pass; that he noticed the truck slowing, apparently to turn at a pumping station; and, he also reduced his speed some. He estimated he was about 50 to 60 feet from the forward truck as it began to turn. He first noticed the car as it passed him, and about that time the winch truck stopped suddenly as though its driver had seen the overtaking car. He braked the pickup to stop and tried to veer to the *538 right but was unable to avoid hitting the forward truck. There was room on the right shoulder for him to have passed if he would have had the time. He stated there was plenty of time for the forward truck to have made a left turn before he reached him, had the truck not stopped to allow the car to go by.
There was a difference of opinions among the passengers in the pickup as to its distance from the winch truck at the time the car passed them, but they generally agreed the car had passed the pickup before the forward truck began its left turn. They testified Miller did not hit his brakes until the forward truck stopped at about the time of or just after the first collision. None of the occupants in the pickup truck saw any left turn signal on the forward truck, although two of them acknowledged the possibility that its brake light may have come on as it made its turn.
The issues involved in this case are whether or not each driver was guilty of negligence which was a proximate cause of the accident, and whether or not the quantum awarded was excessive or inadequate.
After carefully examining the record of this case, this Court finds that it agrees with the holdings of the district court on the issues of liability. We find that James E. Broussard, the driver of the winch truck owned by Odell Vinson Oil Field Contractors, Inc., made a left turn across a highway toward a private driveway without giving a signal and without ascertaining that such a movement could be made with reasonable safety. Brous-sard had previously noticed the two following vehicles, but before making his left turn, he failed to look again for overtaking traffic. Had he looked, he would have been able to observe the overtaking automobile and the following truck, and he could have anticipated that a left turn or sudden stop could cause an accident.
LSA-R.S. 32:104 provides the following:
“A. No person shall turn a vehicle at an intersection unless the vehicle is in proper position upon the roadway as required in R.S. 32:101, or turn a vehicle to enter a private road or driveway, or otherwise turn a vehicle from a direct course or move right or left upon a roadway unless and until such movement can be made with reasonable safety.
“B. Whenever a person intends to make a right or left turn which will take his vehicle from the highway it is then traveling, he shall give a signal of such intention in the manner described hereafter and such signal shall be given continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning.
“C. No person shall stop or suddenly decrease the speed of a vehicle without first giving an appropriate signal in the manner provided herein to the driver of any vehicle immediately to the rear when there is opportunity to give such signal.”
We also find that Vowell N. Miller, the driver of the pickup truck, was guilty of negligence that was a proximate cause of the accident in following the forward vehicle too closely and in failing to maintain proper control of his truck. The evidence shows that Miller had been following the forward truck without intention of passing at a distance of less than 400 feet, and as he saw the forward truck slowing with the apparent intention of making a left turn into a private driveway, he simply slowed down somewhat to allow the forward truck to make its left turn and get out of the way. However, because of the sudden stop made by the forward truck at or after the time of its collision with the car, Miller was unable to stop the pickup or take other action to avoid an accident. This was certainly negligence on his part. LSA-R.S. 32:81 provides as follows:
“A. The driver of a motor vehicle shall not follow another vehicle more closely than is reasonable and prudent, having due regard for the speed of such vehicle *539 and the traffic upon and the condition of the highway.
“B. The driver of a motor truck, when traveling upon a highway outside a business or residential district, shall not follow another motor truck within four hundred feet, but this shall not be so construed as to prevent one motor truck from overtaking and passing another.”
We likewise agree with the holding of the district court that Donald L. Brown, driver of the Milchem, Inc. car, was free from negligence under the evidence presented. We believe the district court’s finding that Brown was traveling 55 miles per hour was correct. The rough estimate of 65 miles per hour made by the two occupants of the pickup was not confirmed by information given to the state trooper, and the district court properly considered this testimony as only rough estimates. There were no markings on the highway to prevent Brown from passing the two forward vehicles, he sounded his horn as he approached each of them, and the evidence shows that the forward winch truck began the left turn without giving a signal at a time when the car was in the process of passing it, when it was too late for Brown to avoid the accident. Brown took reasonable action in attempting to speed up and driving partly on the shoulder of the road to get around the winch truck, and, according to the evidence, almost succeeded in avoiding the accident. Considering the record of this case, this Court finds no manifest error in the holdings as to negligence of the three drivers as made by the district court.
Counsel for Odell Vinson Oil Field Contractors, Inc. and Travelers Insurance Company, maintains that the negligence of James E. Broussard, assuming it to have been proven, was not the proximate cause of the accident between the two trucks. It is submitted that error was made in considering the two accidents, that is, the minor accident between the winch truck and the car, and the major accident between the two trucks, as one accident for the purpose of determining negligence. It is maintained that the minor impact of the first accident and the legal duties resting on those two drivers toward each other should not enter into a consideration of the duties resting on the drivers of the two trucks toward each other. In this connection it is urged that Miller realized the forward truck was slowing down for a left turn, and there was no breach of duty by the driver of the winch truck as to the driver of the following pickup truck. After considering this argument, this Court finds it cannot agree that the driver of the lead winch truck violated a duty which was owed only to the overtaking car. In the first place, the evidence shows there was only a short interval between the two collisions, and the events should be considered one accident. Also, the requirements of law set out in LSA-R.S. 32:104 extend not only to the overtaking vehicle, but also to the occupants of any vehicle in the immediate vicinity who might be placed in a dangerous situation. Under the facts of this case, we find that the violation of the duties placed on ■ Broussard by the statute was a legal cause or cause in fact of the collision between the two trucks, and that the oqcupants of the following pickup truck were members of the class of persons sought to be protected by the statute.
In the companion case, since Miller was also guilty of proximate negligence, the subrogation claims for the collision loss to the pickup truck and for the workmen’s compensation benefits paid to Miller were properly denied. The subrogation claim for the workmen’s compensation benefits paid to the other passenger in the pickup, Walter Reed, was properly allowed. Accordingly, the companion case will be also affirmed on the issue of liability.
The final issue for our consideration is whether or not the award granted to plaintiff should be increased or decreased. Plaintiff was rendered unconscious by the accident and was carried to St. Patrick’s Hospital in Lake Charles, *540 where he was seen by the treating physician, Dr. G. E. Barham of Lake Charles. Plaintiff complained of pain in the left chest and left flank. Dr. Barham’s diagnosis was that plaintiff received a concussion, contusions of his left chest wall and ribs and of his left flank wall, injury to the left lower back region and a large he-matoma of his right leg. He was hospitalized for one day for observation. Dr. Bar-ham continued treatments of plaintiff until he discharged him for work on January 31, 1969. Treatments consisted of medications, injections, and the prescription of a low back brace. Ón October 29, 1968, he referred plaintiff to Dr. Edmond Campbell, an orthopedist, for treatment of the low back sprain. It was Dr. Barham’s opinion that plaintiff had a pre-existing arthritic condition which was aggravated by the accident and injury to the lower back.
Dr. Edmond C. Campbell, orthopedist in Lake Charles, examined plaintiff on October 29, 1968, and diagnosed his condition as a lumbosacral sprain, aggravated by pre-existing degenerative changes. X-rays showed moderately advanced hypertrophic changes throughout the lumbar spine, with mild to moderate narrowing of the lumbo-sacral interspace posteriorly. He saw plaintiff again on December 17, 1968, and found plaintiff to have improved somewhat, but still having pain and limitation on motion in the low back. After an examination on January 14, 1969, he released plaintiff for work. Dr. Campbell could not say that plaintiff had no symptoms at that time, but felt that he was able to return to work. Dr. Campbell treated plaintiff for a straining injury of the low back in 1963, when plaintiff returned to work after approximately six weeks. Plaintiff had degenerative arthritic changes at that time.
Dr. Charles V. Hatchette, an orthopedist of Lake Charles, examined plaintiff on October 24, 1968, and on January 29, 1969. On October 24, 1968, he diagnosed plaintiff’s condition as a lumbosacral sprain, superimposed on arthritic changes of the spine. At the time, he felt plaintiff would recover in three to six months. On the last examination, he believed plaintiff had improved, but was still unable to do any type of heavy work. Dr. Hatchette believed there was an aggravation of plaintiff’s arthritic condition, but that it would resolve itself to the pre-accident condition where plaintiff could return to work in six to twelve months after the injury.
Dr. Norman P. Morin, another orthopedist of Lake Charles, examined the plaintiff on May 19, 1969. It was his opinion that plaintiff had completely recovered from any injury he sustained at the time of his examination. He did not believe there had been any aggravation of the arthritic condition by the accident, and felt that although plaintiff had sustained some injury which was complicated by the arthritic condition of the spine, that at the time of his examination, plaintiff had returned to his pre-accident condition. He thought plaintiff could return to heavy labor as well at that time as he could have before the accident.
The record shows that plaintiff was earning $400.00 per month prior to the accident. The district court found that plaintiff had established he was disabled for a period of at least six months and awarded loss of wages in the amount of $2,400.00. Medical expenses of $523.98 and general damages of $6,000.00 were awarded. The district court found that all of the expert -witnesses testified that plaintiff should have recovered to the point where his condition was no worse than before the accident in a period of from six months to a maximum of twelve months, from the date of the accident.
Although the doctors were of the opinion that plaintiff, who was 56 years of age at the time of the accident, was not able to perform heavy manual labor because of the arthritic condition of his back, they believed this condition had existed for a rather long time, and that plaintiff had not been completely free of symptoms as a result thereof. The doctors would not have passed the plaintiff for an employment *541 physical, either before or after the latest accident. Plaintiff testified he returned to light janitorial work about one year after the accident. Considering the evidence in this case, this Court finds no manifest error in the district court’s finding that plaintiff had substantially recovered to his pre-accident condition and was able to return to work six months after the accident. The evidence supports the district court’s award of $2,400.00 for loss of wages, and there is no dispute as to the award of $523.98 for medical expenses.
Considering the recent awards to others with similar injuries as received by plaintiff, this Court finds that the award of $6,000.00 for general damages was well within the wide range of discretion afforded the district court; and accordingly, we find that the total award to plaintiff of $8,923.98 was neither excessive nor inadequate.
For the reasons assigned, the judgment of the district court is affirmed. All costs of appeal are assessed against Appellants, Odell Vinson Oil Field Contractors, Inc. and Travelers Insurance Company.
Affirmed.