283 So.2d 313 (1973)
Jesse O. SMITH and Lititz Mutual Insurance Company
v.
Dorothy MAXENT et al.
Dorothy MAXENT, as natural tutrix and on behalf of her minor child, Willie Maxent, et al.
v.
Steve JOHNSON et al.
Ernestine JONES, wife of Steve JOHNSON, Individually and as natural tutrix and administratrix of the Estate of her minor son, Wilfred Johnson
v.
NEW ORLEANS PUBLIC SERVICE, INC.
Nos. 5545-5547.
Court of Appeal of Louisiana, Fourth Circuit.
September 26, 1973.
*314 Fontana & Koerner, Louis R. Koerner, Jr., New Orleans, for Jesse O. Smith, plaintiff-appellant.
Bienvenu & Culver, Leonard A. Young, New Orleans, for Lititz Mutual Ins. Co., plaintiff-appellant.
Edna Sakir, New Orleans, for Wilfred Johnson, defendant-appellee and plaintiff-appellant.
A. R. Christovich, Jr., and C. B. Ogden, II, New Orleans, for New Orleans Public Service Inc., defendant-appellee.
Roger B. Jacobs, New Orleans, for Dorothy Maxent, defendant-appellee and plaintiff-appellant, and Willie Maxent, Ronald Olezene, James Lee and Bill Toney, plaintiffs-appellants.
Before REDMANN, LEMMON and STOULIG, JJ.
STOULIG, Judge.
The appeals in these consolidated cases involve claims for personal injuries and property damages sustained by multiple plaintiffs as the result of an automobile-bus collision in the intersection of Jackson Avenue and Annunciation Street in the City of New Orleans. All occupants of the automobile and one bus passenger filed personal injury suits. After the impact, the bus went out of control, running into a doughnut shop on the uptown-lake corner of the intersection. As subrogee, the insurer, Lititz Mutual Insurance Company, sued to recover the amount paid to the owner of the building for his physical damage. The lessee-operator of the doughnut shop, Jesse O. Smith, claimed damages for loss of stock, equipment, and future profit. All plaintiffs, other than the automobile driver, seek judgments holding the owner of the automobile, Dorothy Maxent; the parents of its minor driver; and New Orleans Public Service Inc. solidarily liable. The automobile driver's claim is only against the transit company. While this matter was pending on appeal, all of the occupants became majors and were substituted as parties plaintiffs.
The issue of fault centers around a factual question, i e., which driver ran the red light at the intersection. After a two-day trial, the district court judge dismissed all suits on a finding that none of the plaintiffs had proved which driver was negligent. From this adverse judgment, appeals were taken by all claimants except Henry Bodin, the passenger on the bus.
The accident happened at 11:50 p. m., on February 12, 1970. Several minutes before, Wilfred Johnson and four other teen-age boys completed their day's work at Ernst Food Store, located on Jackson Avenue approximately three blocks on the river side of the accident scene. With Johnson driving, they started homeward in a car owned by Dorothy Maxent. From a parked position in front of and perpendicular to the store, Johnson backed the vehicle into Jackson Avenue. Traveling in the left lane in a lakebound direction, he proceeded three blocks before colliding with the bus, which had been moving in a westerly, or uptown, *315 direction on Annunciation Street. The bus driver was thrown through the window by the impact and was killed when rolled over by the bus. The bus then continued in motion, knocking down a semaphore (signal) on the neutral ground of the intersection and finally plowing into the doughnut shop before it came to rest. These facts are not disputed.
The evidence determinative of liability is conflicting. There is testimony to the effect that Johnson, driving at a legal rate of speed, entered the intersection on a favorable light and was hit by the bus that proceeded against a red light. The countervailing testimony produced by the transit company is to the effect that Johnson, proceeding at a high rate of speed, ran the red light. Counsel for Public Service attempted to adduce evidence to show Johnson was drag racing with another vehicle, driven by Patrick Bosetta, assistant manager of the food store.
It devolves upon us to resolve the conflicting testimony, which may be summarized as follows: After describing his entry into the neutral ground lane of Jackson Avenue from the parked position in front of the food store, Johnson estimated he was driving approximately 35 miles per hour, the lawful rate of speed. As he approached the intersection of Annunciation, he noticed the traffic signal for Jackson Avenue traffic was red, so he took his foot off the accelerator and began braking gradually. When he was approximately two car lengths from Annunciation Street, the light changed to green in his favor.[1] He then removed his foot from the brake and was about to accelerate when he noticed this "green thing" (the bus) coming across the intersection. Despite immediately applying his brakes and swerving to his left, the collision occurred in the center of the intersection.
All four passengers in the car corroborated parts of Johnson's version of the accident.[2] They stated the vehicle was traveling in the neutral ground lane at a speed variously estimated at between 25 and 35 miles per hour. They felt the car slow down as it neared the intersection of Annunciation. Not one was able to say whether a red or green light faced Jackson Avenue traffic as they were engaged in conversation and were not paying particular attention to the traffic signal because they were not driving.
All occupants of the car were treated at Charity Hospital for injuries inflicted in the accident. Appearing in the history (forming part of the medical report stipulated into evidence) taken on admission of Bill Toney, one of the passengers, is the notation, "In accident tonight while drag racing." On the same page it is noted that Toney smokes one pack of cigarettes a day, drinks some beer and liquor, and is in the tenth grade. Toney recalled discussing his smoking and drinking habits and his educational level, but denied stating he had been involved in a drag race. The source of this information is not indicated in the history.
A second witness confirming the driver's statement that the automobile entered the intersection on a green light was Barbara Crayton, who lived several doors away from Wilfred Johnson in the St. Thomas Housing Project. At the time, she was standing with two friends on the downtown lake corner of the intersection. She explained while attempting to telephone a friend from a public booth located on the corner, she noticed the bus enter into the intersection without stopping for the red light against Annunciation Street traffic. According to this witness, the driver failed to stop at the bus stop and was "going kind of fast."
*316 Miss Crayton testified she did not remain at the scene of the accident after its occurrence, and it was not until several weeks later while in the Ernst Food Store that she saw Willie Maxent with his arm in a sling and learned he had been in the accident she had witnessed. Her acquaintance with the parties involved in the accident, including Johnson, is limited to seeing them in Ernst Food Store.
One of Public Service's witnesses, Patrick Bosetta, supports the Johnson version in that he denied being involved in a drag race and he estimated Johnson's speed at between 30 and 40 miles per hour immediately before the collision. On the date of the accident, he was employed at the food store as an assistant manager and had left work at the same time as Johnson and his friends. Bosetta recalls he first backed into Jackson Avenue and was traveling lakeward in the right traffic lane. When he was slightly less than a block from Annunciation Street, Johnson's car passed in the left lane at an estimated speed of between 30 and 40 miles per hour. He further testified that when Johnson's vehicle was two to three car lengths from the intersection, the bus entered from Annunciation Street and immediately the tail lights of the Johnson automobile flashed, indicating the brakes had been applied. However, the car did not slow down and it simply crashed into the bus. Mr. Bosetta was able to stop his automobile one car length from the moving bus. He approximated the distance between his automobile and the Johnson vehicle to be two to three car lengths at the time that both drivers applied their brakes. He gauged the speed of the bus at between 10 to 15 miles per hour. This witness was unable to recollect whether the signal light for Jackson Avenue traffic was red or green. As to the character of all the occupants of the Johnson vehicle, he observed they were all good, conscientious workers.
The only witness clearly stating the Johnson vehicle ran a red light before colliding with the bus was Woodrow Stewart, also a Public Service bus driver, who, co-incidentally, was a half brother of the driver killed in the accident. On the night of the accident, he was operating a bus on the Jackson route. As he turned his bus from Rousseau Street into Jackson Avenue, having just completed the left turn, he had to stop because a maroon car (the Johnson vehicle) was partially occupying the right and left traffic lanes. Simultaneously he noticed a white car (Bosetta's) back out from the parking area and proceed down Jackson Avenue at a high rate of speed with the Johnson automobile taking out after it. He rated the speed of these two vehicles at between 50 and 60 miles per hour, or more.
Rousseau Street is parallel to and located three blocks from Annunciation Street with St. Thomas and Chippewa being the intervening streets intersecting Jackson Avenue. According to Stewart, his bus was less than one block from the scene of the accident when the collision occurred. It is difficult, if not impossible, to reconcile his testimony that his bus, moving at 25 miles per hour, traversed two and one-third blocks in the same length of time that the Johnson automobile required to travel three blocks at 50 to 60 miles per hour.
According to this witness, the bus entered the intersection at a speed of between three and five miles per hour and should have been able to stop had its driver seen the approaching Johnson car. Further, he contradicted Bosetta's assertion that he stopped one car length from the bus in stating the white car swung around the back end of the bus and continued down Jackson Avenue.
In support of Stewart's testimony as to the color of the signal light, counsel for the transit company relied on a statement of Henry Bodin, one of the plaintiffs, made 10 hours after the accident to a claims adjuster for Public Service, in which he said that the signal light for Annunciation Street was green when the bus proceeded into Jackson Avenue. He repudiated this *317 fact at the trial, testifying he was reading a newspaper at the time of the accident and was unaware of the color of the light. He admitted signing the statement but said he did it only to get rid of the adjuster. From the contents of the statement, it appears that it contains only information that could have been elicited from Bodin. After testifying that Mr. Bodin was cooperative, the claims representative stated that he was only interested in recording the facts, whether favorable or unfavorable to his employer. Admittedly, the adjuster failed to inquire of this 72-year-old witness if he was under medication even though the statement was taken the same day as his discharge from the hospital.
We do not find Mr. Bodin's testimony to be very impressive. Apparently he had difficulty in expressing himself and displayed an uncooperative attitude. The substance of his testimony is to the effect that the bus did stop before entering Jackson Avenue; that he was unaware of the color of the signal light at the time; and that he did witness the driver's being hurled from the bus.
From the summarized testimony, we find the evidence preponderates to the effect that the Johnson vehicle entered the intersection on a green light proceeding at a legal rate of speed. When the bus entered against the red light, Johnson was not afforded sufficient time to avert the collision. The testimony of Johnson, the independent witness Miss Crayton, his passengers, and parts of the Bosetta account support his affirmation that the light was green in his favor. The inference of drag racing appearing in the medical history of one of the victims is negated by positive evidence.
The witness for Public Service [Stewart] claiming Johnson ran a red light is not acceptable. If, as this witness claims, the two cars with a faster acceleration had covered three blocks moving at a speed of 60 miles per hour, it would have been impossible for his bus, traveling at a maximum speed of 25 miles per hour, to cover two and one-third blocks in the same length of time. This is particularly true when Stewart stated his bus had to travel for approximately one block before it could be accelerated to 25 miles per hour, and when he did not even start to move his bus until the two cars allegedly began traveling down Jackson Avenue at high speed. As to Bodin, his prior conflicting statements to the adjuster renders his testimony of little probative value.
Thus we conclude the negligence of the bus driver, an agent of Public Service, was the sole proximate cause of the accident. Whether the driver simply missed the signal or whether the bus in question was experiencing a brake problem remains in the realm of speculation. (The police department has no "facility" to tow a bus for the purpose of having its brakes tested.)
We next consider quantum. In determining the awards for the occupants of the automobile, we have only the stipulated medical reports upon which to base our opinion. No medical experts appeared to explain in detail the injuries, treatment, and residual effects.
First, we consider the claim of Wilfred Johnson. After being knocked unconscious at the scene, he was taken to Charity Hospital where he remained for eight days, three of which were in the intensive care unit. After his discharge from the hospital, he was confined to bed at his home for another three weeks. The hospital report indicates he sustained fractures of two ribs and the middle third of the sternum; chest and lung complications; and lacerations of the aorta, face, and neck. The chest wall was surgically tapped to remove fluids.
A consultant report of Dr. Byron Unkauf, dated September 8, 1971, is the only clue we have to interpreting the effect of the injury. Dr. Unkauf apparently took a history from Johnson and did not have the Charity Hospital record when his report *318 was rendered. He noted two scars on the right side of the jawbone and one on the left. He estimated the residual disability to Johnson at 3 percent to the whole body.
The stipulated special damages for which Johnson is entitled to judgment are $501.55 for medical expenses at Charity Hospital and $450 for loss of wages. The bill of Dr. Unkauf for consultation is not an expense incurred for treatment of the injury but a fee for assisting in preparation for trial; hence it is not recoverable. Considering the severity of his injuries and the attendant pain and suffering, together with the residual disability, we think an award of $5,000 in general damages is warranted in addition to the $951.55 stipulated special damages. Lowery v. Anderson, 265 So.2d 644 (La.App. 2d Cir. 1972); Gloston v. Milchem, Inc., 234 So.2d 534 (La.App. 3d Cir. 1970).
Ronald Olezene, a passenger, was knocked unconscious and was examined at Charity Hospital after the accident, where he was treated for frontal hematoma. He was discharged several hours later. An orthopedic examination three months after the accident failed to clinically substantiate complaints of leg and head pain. On this evidence we think an award of $750 for general damages is fair. Moore v. Triple Eight Cab Company, 259 So.2d 396 (La. App. 2d Cir. 1972); Gray v. Nathan, 221 So.2d 859 (La.App. 1st Cir. 1969). His specials include a $20 bill for treatment or examination at Charity Hospital and $150 loss of wages. The total award is $920.
James Lee, a passenger, sustained injuries to the head, his right side and hand for which he was hospitalized four days at Charity Hospital. He returned for two outpatient visits on February 20 and March 20, 1970, and on the latter date was discharged. Neurological examination in May 1970 showed no residual disability. We think an award of $1,500 general damages is appropriate. Metzger v. Scott, 244 So. 2d 671 (La.App. 4th Cir. 1971); Harden v. Houston Fire and Casualty Company, 234 So.2d 219 (La.App. 2d Cir. 1970). His compensable special damages include $167.40 medical to Charity Hospital and $115 loss of wages. This totals $1,782.40.
Bill Toney, a guest passenger, incurred a lacerated right foot and left leg which were surgically repaired at Charity Hospital. He also sustained a fractured toe. He was discharged from the hospital one week after the accident, but walked on crutches for several weeks thereafter. The residual disability he suffered was described in a report by Dr. H. R. Soboloff, an orthopedist, in this way:
"The patient has lost 15 percent of the functional use of the entire foot secondary to the loss of function of the great toe as well as the tenderness in the longitudinal arch. He will always have to wear some type of softer or modified shoe, as opposed to getting his foot into a regular shoe, which we feel will be far to tender for him and the pressure will cause too much discomfort."
We fix his general damages at $10,000. Veal v. Hotard, 256 So.2d 327 (La.App. 1st Cir. 1971); Adams v. Employers Liability Assurance Corp., 232 So.2d 311 (La.App. 3d Cir. 1969). Compensable special damages include medical of $614.90 and loss of wages of $550, or a total of $1,164.90.
Willie Maxent, the passenger seated on the right front seat when the impact occurred, suffered a fractured humerus in the right arm. He was treated at Charity Hospital and discharged on February 17, 1970. He then continued treatment on an outpatient basis until July 30, 1970. For 10 to 12 weeks after the accident he experienced radial nerve palsy. Orthopedic evaluation notes the fracture was healing as of October 30, 1970, but he would have a 15-percent residual disability of the right elbow on a permanent basis. This percentage was assigned because of the necessity of the elbow for heavy duty lifting. We think an award of $10,000 general damages *319 is appropriate. Foreman v. Vermilion Parish Police Jury, 258 So.2d 652 (La.App. 3d Cir. 1972); Vick v. Hanover Insurance Company, 221 So.2d 523 (La.App. 2d Cir. 1969). His compensable specials include medical of $400.95 and loss of wages of $450, or a total of $850.95.
Lititz Mutual Insurance Company, the owner's insurer, is entitled to a judgment of $3,142. The correctness of this figure has been stipulated.
Finally, we consider the claim of Jesse O. Smith, operator of the doughnut shop. He testified his loss of materials (shortening, flour, sugar, doughnut flour) and damages to a few fixtures and appurtenances of the shop totaled $343.75. This figure is not contested. After the accident, his shop was closed seven weeks while repairs were being made. His claim for loss of profits includes what he projects he would have reaped during the closed period plus the loss of business after he reopened due to loss of customers as a result of being closed. It is apparent he lost profits, but his testimony, hostile at times, is not helpful. In computing the damage, we will allow the difference in profits between those months he claims he was affected in 1970 as compared to what his records indicate he netted in 1969.

 1969 1970
February $ 844.71 $ 302.58
March 1,149.36 0.00
April 847.41 780.12
May 962.92 783.47
June 761.87 693.59
July 928.32 677.44
August 905.20 734.20
September 704.87 751.29
 _________ _________
 $7,104.66 $4,722.69

Thus the difference in profits between February and September of 1969 as compared with the same period for 1970 is $2,381.97. Smith's award for loss of materials and loss of profits totals $2,725.72.
For the reasons assigned, the judgment appealed from is reversed insofar as it dismissed the transit company, and it is now ordered, adjudged and decreed that there be judgment against defendant New Orleans Public Service Inc. in favor of plaintiffs in the amounts specified, i. e., Wilfred Johnson for $5,951.55; Ronald Olezene for $920; James Lee for $1,782.40; Bill Toney for $11,164.90; Willie Maxent for $10,850.95; Lititz Mutual Insurance Company for $3,142; and Jesse O. Smith for $2,725.72, together with legal interest from the date of judicial demand until paid. All other third party claims are dismissed. Defendant New Orleans Public Service Inc. is to pay all costs at the trial and appellate levels.
Reversed in part and rendered.
NOTES
[1] This testimony is consistent with the time cycle of this signal light as testified to by John Exnicios, traffic engineer for the City of New Orleans.
[2] During the course of the trial, the judge made the observation that he was "* * * very impressed with their [Willie Maxent and Charles Wilfred Johnson] honesty * * *."