299 So.2d 517 (1974)
Joel Stengel SMITH, widow of Milton J. Smith, et al.
v.
MANCHESTER INSURANCE & INDEMNITY COMPANY et al.
No. 6255.
Court of Appeal of Louisiana, Fourth Circuit.
July 18, 1974.
Rehearings Denied September 10, 1974.
Writs Refused November 15, 1974.
*518 Kronlage, Dittmann & Caswell, Charles A. Kronlage, Jr., New Orleans, for Mrs. Joel Stengel Smith, plaintiff-appellee-appellant.
*519 Jones, Walker, Waechter, Poitevent, Carrere & Denegre, Robert Henry Sarpy, Jr., New Orleans, for James C. Smith, Diane S. Peterson, Noell Peterson on behalf of his minor daughter, Monteil Peterson, plaintiffs-appellees-appellants.
Robert F. Pitard, New Orleans, for Manchester Ins. & Indem. Co., Billy Garrett, and Nola Cabs, Inc., defendants-appellants.
Deutsch, Kerrigan & Stiles, Ralph L. Kaskell, Jr., New Orleans, for Toye Bros. Yellow Cab Co. and Employers Reinsurance Corp., defendants-appellants.
Before SAMUEL, STOULIG and MORIAL, JJ.
SAMUEL, Judge.
This action for wrongful death and survival damages was filed by Joel Stengel Smith, the widow of the decedent, Milton J. Smith, and by the decedent's two major children, James C. Smith and Diane Smith Peterson. The suit also includes an action filed by Noell Peterson, the father of Monteil Peterson, a minor, for medical expenses and injuries to his daughter.
The injuries and death resulted from an accident which occurred on Thanksgiving day, November 27, 1969, when a motorcycle operated by Mr. Smith, on which Monteil, his granddaughter, was a passenger, was struck by a taxicab which failed to stop for a stop sign.
Named defendants are: Billy Garrett, the driver of the taxicab; Toye Brothers Yellow Cab Company, owner of the taxicab; Manchester Insurance and Indemnity Company, the primary insurer with limits of $25,000-$50,000; and Employers Reinsurance Corporation, which had issued excess insurance to Toye Brothers.
Initially all defendants denied liability, but at the trial they stipulated the conduct of their driver at the time of the accident had been negligent, and that this negligence was the proximate cause of the accident and resulting damages.
After a trial on the merits, judgment was rendered on the death action in favor of all plaintiffs against all defendants totaling $212,994.07. The following specific awards were made:

1. In favor of Mrs. Joel Stengel
 Smith:
 Special Damages ......................... $ 2,662.00
 Loss of Support ......................... 62,000.00
 Loss of Love and Affection .............. 50,000.00
 Survival Action (1/3 of the damages
 for pain and suffering
 sustained by Mr. Smith) ............... 16,934.29[1]
 ___________
 TOTAL .. $131,596.29
2. In favor of James C. Smith:
 Loss of Love and Affection ............. $ 20,000.00
 Survival Action (1/3 of the damages
 for pain and suffering
 sustained by Mr. Smith) .............. 16,934.29
 ____________
 TOTAL .. $ 36,934.29.
3. In favor of Mrs. Diane Smith
 Peterson:
 Loss of Love and Affection ............... $ 20,000.00
 Survival Action (1/3 of the damages
 for pain and suffering
 sustained by Mr. Smith) ................. 16,934.29
 ____________
 TOTAL .. $ 36,934.29.
4. In favor of Noell Peterson, for
 his daughter, Monteil:
 Special Damages ........................ $ 29.20
 Pain and Suffering ..................... 7,500.00
 ____________
 TOTAL .. $ 7,529.20.

All parties have appealed from the judgment. In addition, Garrett, Toye Brothers, and Employers Reinsurance Corporation filed a pleading in which they obtained permission to deposit into the registry of the court "a sum petitioners admit is due to plaintiffs." Pursuant thereto, these defendants deposited $106,886.97 in favor of Mrs. Smith, representing an admitted liability of $91,596.69 plus interest from date of judicial demand; $25,007.67 in favor *520 of Diane Smith Peterson, representing $21,434.30 admittedly owed plus interest from date of judicial demand; and $25,007.67 in favor of James C. Smith, representing $21,434.30 admittedly owed plus legal interest from date of judicial demand. The primary insurer, Manchester Insurance & Indemnity Company, deposited into the registry of the court what it calculated to be all costs.
The sole issue for decision on appeal is whether the awards made by the trial court are excessive or inadequate. The defendants contend the awards are excessive; the plaintiffs seek increases.
One of the most strongly contested issues is the amount of damages awarded for Mr. Smith's pain and suffering prior to his death. The trial court rendered judgment in the amount of $3,000 per day for 16 days, totaling $48,000.[2]
On the day of the accident, the Smiths and the Petersons gathered at the Smith household for Thanksgiving dinner. During the course of the day, the decedent, who was an extremely active man, took a motorcycle ride with his granddaughter. When Garrett ran the stop sign and struck the motorcycle, Mr. Smith sustained massive injuries. His spinal cord was completely severed, he sustained a fracture of the inferior facet of the lumbar vertebrae at the L-3 level, with dislocation of L-3 and L-4, a severe comminuted compression fracture of the lumbar vertebrae at the L-4 level, with total disruption, a compression fracture of the dorsal, or thoracic vertebrae (T-12), a fracture of the right first rib, and a displaced fracture of the right wrist.
The transection of Smith's spinal cord resulted in complete sensory and motor paralysis from the L-4 and L-5 level of his back through his feet. He was unable to move his feet and legs, lost all sensation in his penis and rectal area, and lost control of urination and defecation. A catheter was consistently kept in his penis to allow excretion of urine, and bowel movements had to be induced with enemas.
The testimony, both lay and medical, together with the hospital records, show Mr. Smith endured substantial physical pain between the time of the accident and his death on December 12, 1969 from an unexpected pulmonary embolism. During this entire time he complained of pain, and pain relieving drugs of various kinds were administered to him in varying degrees of strength depending on the circumstances. Mr. Smith himself attempted to avoid excessive use of narcotic pain killers for fear of addiction, and his physicians testified they attempted to keep the administration of pain killing drugs to a minimum. Moreover, contrary to defendants' assertion, it is clear he was aware of the extent and permanency of his injuries and of the irreversible nature of his complete lower paralysis and loss of control of elementary bodily functions.
Mr. Smith did not lose consciousness when struck by the taxicab. The accident occurred near his home and his son-in-law and daughter went to the scene of the accident very shortly after its occurrence. When they reached the spot, he was still astride the motorcycle. When his son-in-law picked the motorcycle off him, he gave instructions that he not be moved because he was "hurt bad." He instructed his daughter not to remove his motorcycle helmet until after the police arrived and complained about his wrist. He was taken thereafter to Southern Baptist Hospital, where his primary complaints of pain were in the areas of his wrist and lung cage, which is not unexpected in view of the complete loss of lower sensory perception. His pain lasted from the time of the accident until the time of his death, and apparently there was no significant reduction in its intensity.
*521 Prior to the accident, Mr. Smith was a physically active man who jogged daily, rode motorcycles, participated in church events, and generally led a full and healthy life. The testimony of his family established that he was a form of patriarch, to whom they all looked for advice and support. The evidence establishes, and common sense dictates, the anguish and humiliation to which a man of this nature was subjected by the accident. Without question he knew that for the rest of his life he would be deprived of movement and feeling in the lower half of his body without ability to control his bladder or bowel functions. He further knew he had lost feeling and use of his sexual organs, that he would be unable to earn a living, and that in all probability he would be dependent on others to supply him with his financial and physical needs for the rest of his life.
Defendants argue the rule originally announced in Gaspard v. LeMaire,[3] and later expounded on in numerous other decisions,[4] recognizing that "much discretion" must be left to the judge or jury in assessing damages under Civil Code Article 1934(3), is technically in violation of Constitution Article 7, § 29, which grants to Courts of Appeal appellate review of both the law and the facts in civil matters. While we note the argument should be made to the Supreme Court of Louisiana, a review of the totality of the facts contained in the present record shows that there was no abuse of the wide discretion given to the trial court by awarding $48,000 for the pain and suffering endured by the decedent in this case.
Plaintiffs cite decisions in which survival awards were proportionately higher than the award granted in this case.[5] The defendants cite cases in which survival awards were lower than the award made in this case.[6] In Gaspard and the cases which followed it, the Supreme Court attempted to set a guide line by stating that awards for general damages should not be disturbed on appeal unless the trier of fact abused the wide discretion afforded it by LSA-C.C. Art. 1934(3) and that awards in other cases are to be used only as an aid or guide line in determining whether there has been an abuse of that discretion and not for the purpose of forming a rigid frame of uniformity. This standard is at best difficult to apply. However, as preceding survival awards have been made which were both higher and lower than the award now before us, we conclude the trial court did not abuse the wide discretion given him in assessing these damages.
The defendants next challenge the award to Mrs. Smith, the surviving widow, *522 of $50,000 for loss of the love and affection of her husband. They argue that in considering the length of time for which love and affection are lost, the anticipated life span of both the decedent and the survivor are relevant, and that the shorter life span governs.[7] They further argue that both Mr. and Mrs. Smith had conditions which made them "poor survival risks." Plaintiffs bring under attack Mr. Smith's condition because in 1962 he had a portion of his stomach removed because of a chronic duodenal ulcer and in 1967 he had an electrocardiogram which was reported as being "within normal limits (but mildly suggestive of myocardial disease)." However, the testimony of the decedent's internist, Dr. David Weilbaecher, established that Mr. Smith had made a complete recovery from his gastric surgery, would not have a shortened life span as a result thereof, and had a completely normal heart. It is important to note that Dr. Weilbaecher's conclusion as to the decedent's heart was based both on his reading of the electrocardiogram and on the description of the decedent's heart in his autopsy protocol. We therefore conclude that there is nothing in the record to establish that decedent was a "poor survival risk" or that he expected any shortened life span.
Defendants base their argument on Mrs. Smith's being a "poor survival risk" on lay testimony given by her and her son concerning a skin cancer condition on her nose. There is no evidence, either lay or medical, that such a condition is generally conducive of shortened life spans or that such would be the case with Mrs. Smith's particular condition.
The evidence shows that Mr. and Mrs. Smith were married in July, 1933 and had never separated during more than 36 years of marriage. They were particularly close and devoted to each other. Since the record discloses no evidence to indicate that Mr. and Mrs. Smith enjoyed anything but a happy marriage, the trial court's award of $50,000 to Mrs. Smith for losss of love and affection was not an abuse of his discretion.[8]
Defendants also attack the award of $63,000 to Mrs. Smith for loss of support. The award included $52,919 for loss of support from Mr. Smith's anticipated future earnings, and $9,081 for loss of 50% of a pension which Mr. Smith had obtained from a former employer. Defendants' argument regarding the $52,919 figure computed on loss of anticipated future earnings is also based on the theory that the decedent was a "poor survival risk" and not entitled to the presumption of a seventeen and one-quarter year life expectancy. We have already concluded there was no evidence to establish that Mr. Smith was suffering from a shortened life expectancy. Moreover, the trial court chose to believe the testimony and computation of the plaintiff's actuary who calculated the decedent's loss of future income to be $105,539. The trial court awarded 50% of this amount, or $52,919, to the plaintiff wife for loss of support. We find no error in this award.
The award of $9,081 for loss of 50% of the pension is erroneous. The decedent's pension, taken as an early retirement, consisted of $77 per month for life, plus a temporary payment of $78 per month to end at age 65.[9] The $77 per month payment for life did not stop on Mr. Smith's death. On the contrary, Mrs. Smith continued to receive the sum of $40.76 for her life, which is more than half of the sum of $77 which Mr. Smith received as an early retirement. Consequently, since she is already receiving more than *523 half of that portion of her husband's pension, she is not entitled to an award for loss thereof.
The temporary pension of $78 per month received by Mr. Smith was terminated at his death. He died when he was 57½ years of age, at which time he was scheduled to receive the temporary pension of $78 per month for another 7½ years, or until he reached the age of 65. Seventy-eight dollars per month is equivalent to $936 per year, which sum multiplied by 7½ years results in a gross future expectancy of $7,020. Deducting 15% of this amount for taxes, contributions, and other expenses,[10] the net amount which could be expected by plaintiff and his wife from the date of his death until age 65 was $5,977. This sum, divided by two, results in the maximum expectancy to Mrs. Smith from her husband's future pension of $2,988.50. Consequently, the award of $9,081 for lost pension benefits will be reduced to $2,988.50,[11] and the total award for lost support in favor of Mrs. Smith will be reduced from $62,000 to $55,907.50.
Defendants next challenge the award of $20,000 each in favor of James C. Smith and Diane Smith Peterson for loss of their father's love and affection. Defendants argue that no reported case in Louisiana has awarded more than $10,000 to a major child for loss of his parent's love and affection resulting from the wrongful death of the parent.[12] Neither counsel for plaintiffs nor our research has revealed any higher awards.
Diane Smith Peterson is a happily married woman with two children of her own. While she and her husband were close to her parents, she nevertheless had separate identity from them and a separate home and family. There is no doubt she loved her father very much and was deprived by his untimely death of love and affection. However, there is nothing in the record to indicate any special reason why she loved her father any more than any other child loves his parent and the record contains no substantial reason for awarding her twice the amount awarded to any other major child who loses a parent. The amount awarded to her will be reduced to the sum of $10,000 for loss of love and affection.
The same reasoning applies to James C. Smith. He had been married three times and was living at his father's home at the time of the accident because of his estrangement from his third wife. While the evidence discloses he occasionally sought advice and financial assistance from his father, the record does not disclose any reason why he should be awarded more than the sum of $10,000 for loss of his father's love and affection. We will amend the judgment appealed from accordingly.
In addition to his claim for loss of love and affection, James C. Smith also seeks an award for the loss of support from his father. The lower court found as a fact that James had recently received a substantial settlement in a law suit, sufficient to properly support him for a long time. The court also concluded that while he did obtain some money from his father, the same was in the nature of a gratuity and not in the nature of a pension or support.
There is evidence in the record indicating that James C. Smith was unable to hold normal employment because of injuries *524 sustained in an automobile accident. However, there is also evidence to show that as a result of the accident he received $75,000, $25,000 of which was used to pay his attorney and $7,000 of which was used to pay outstanding obligations. The remaining $43,000 was placed by him in numerous bank accounts under a different name, for the apparent reason of avoiding alimony payments to his first wife. While there is some evidence of business failures consuming a portion of the $43,000, there is more than enough evidence in the record to sustain the trial court's finding that as a matter of fact young Smith was not dependent on his father for support. We find no error in that conclusion.
The final issue is the judgment awarded Noell Peterson for the injuries sustained by his daughter, Monteil. As has been pointed out, Monteil was riding on the motorcycle with her grandfather when the collision occurred. She was able to extricate herself from under the motorcycle and run to her mother as her mother and father approached the scene of the accident, and the only visible injuries which she sustained were bruises and abrasions of her back, knee, hip and thigh. She was taken to the emergency room at Southern Baptist Hospital, where the bruises and abrasions were bandaged and she was given a tetanus shot. Three days later her mother took her to a private physician, who found multiple minor abrasions with areas of ecchymosis around the knee and left leg, with some visible swelling of the left foot. Her physician found her able to walk without a limp, saw no positive neurological findings, and reached a diagnosis of multiple bruises and abrasions. There appears to have been no need for further medical attention, no other visit to a physician was made in regard to the injuries received in the accident, and Monteil completely recovered from her physical injuries in a matter of days.
The main damage allegedly sustained by Monteil was of a psychological nature. After the accident she became quiet, nervous and withdrawn. She is reluctant to visit Mrs. Smith's house now, since it causes memories of the accident to revive in her mind, and occasionally she cries when the accident is recalled. She was not taken to a psychiatrist by her parents, who do not believe in psychiatric care as a matter of principle. There is no medical evidence of psychological damage.
Monteil is not entitled to damages for the loss of her grandfather since she is not a member of the class of statutory beneficiaries recognized by Article 2315 of the Civil Code. Moreover, she is not entitled to recover damages for mental anguish which she might have sustained as the result of seeing her grandfather gravely injured.[13]
Monteil is entitled to damages for the physical injuries which she sustained and for any mental anguish which might have resulted therefrom. However, recent awards clearly show that the lower court committed an abuse of its discretion by awarding her $7,500.[14] Without the benefit of expert testimony to explain the cause and extent of Monteil's psychological condition, it is difficult to arrive at a proper award. There is no doubt that the child, who was 12 years of age at the time of the accident, received some mental anguish and was caused some anxiety as the result of being suddenly struck down while a passenger *525 on a moving motorcycle. However, the record discloses that the primary cause for any personality changes or psychological problems is the injury to her grandfather and his eventual death. For these reasons, we feel a proper award to Monteil would be $1,000 to cover both the physical and mental injuries resulting from the accident.
For the reasons assigned, the judgment appealed from is amended by reducing the award in favor of plaintiff, Joel Stengel Smith, for loss of support from $62,000 to $55,907.50; by reducing the awards in favor of James C. Smith and Diane Smith Peterson, for loss of love and affection from $20,000 each to the sum of $10,000 each; and by reducing the award in favor of Noell Peterson, individually and on behalf of his minor daughter, Monteil Peterson, individually and on behalf of his mison, from $7,529.20 to $1,029.20. As thus amended, and in all other respects, the judgment appealed from is affirmed.
Amended in part; affirmed in part.
NOTES
[1] LSA-C.C. Art. 2315 provides that a decedent's claim survives and can be brought by the surviving spouse and major heirs, each sharing equally. Consequently, the amount was divided equally between Mrs. Smith, James Smith and Mrs. Peterson. See also Austrum v. City of Baton Rouge, 282 So.2d 434 (La.S.Ct.); McFarland v. Illinois Central Railroad Company, La.App., 122 So.2d 845.
[2] This amount was divided equally between plaintiffs as explained in footnote 1, supra, together with special damages of $2,802.89, thereby making the entire survival award $50,802.89.
[3] 245 La. 239, 158 So.2d 149.
[4] Walker v. Champion, 288 So.2d 44 (La. S.Ct.); Fox v. State Farm Mutual Automobile Insurance Co., 288 So.2d 42 (La.S. Ct.); Miller v. Thomas, 258 La. 285, 246 So.2d 16; Lomenick v. Schoeffler, 250 La. 959, 200 So.2d 127; Ballard v. National Indemnity Company of Omaha, Neb., 246 La. 963, 169 So.2d 64.
[5] See Charles v. Town of Jeanerette, Inc., La.App., 234 So.2d 794, where $10,000 was awarded for approximately four hours pain and suffering; Soileau v. Continental Insurance Company, La.App., 228 So.2d 522, where an award of $7,500 was made for 39 hours of pain and suffering; Richard v. American Oil Company, 213 So.2d 158, where an award of $3,500 was made for 2 hours pain and suffering; McFarland v. Illinois Central Railroad Company, La.App., 122 So. 2d 845, where $4,500 was awarded for one hour of pain and suffering.
[6] See Brouillette v. State, Through Dept. of Highways, La.App., 275 So.2d 196, where the equivalent of less than $1,000 per day of hospitalization was awarded; J. Wilton Jones Co. v. Liberty Mutual Insurance Co., La.App., 248 So.2d 878, where $15,000 was awarded for a decedent who lived more than 2 years after the accident; Harkins v. State, Department of Highways, La.App., 247 So. 2d 644, where the court awarded $10,000 for pain and suffering for approximately 1 month; Barthelemy v. Phoenix Insurance Co., La.App., 226 So.2d 603, where an award of approximately $150 per day was made for pain and suffering prior to death; and Waters v. Southern Farm Bureau Casualty Ins. Co., La.App., 212 So.2d 487, where $15,000 was awarded for a decedent who lived 15 days after his injury.
[7] See Brown v. S. A. Bourg & Sons, Inc., 239 La. 473, 118 So.2d 891.
[8] See Luttrell v. State Farm Mutual Automobile Ins. Co., 244 So.2d 97.
[9] The $78 per month payment was received for being retired early because of a reduction in force at his employer's plant.
[10] As did plaintiff's actuary.
[11] It should be noted that this award is paid without regard to any discount for present value.
[12] Defendants cite Barnett v. Trinity Universal Insurance Company, La.App., 286 So. 2d 770; Richard v. Guillot, La.App., 284 So. 2d 127; Petree v. Crowe, La.App., 272 So. 2d 399; LeBlanc v. Estate of Blanchard, La.App., 266 So.2d 918; Harkins v. State, Department of Highways, footnote 6; Jarvis v. Prout, La.App., 247 So.2d 244; Luttrell v. State Farm Mutual Automobile Insurance Company, footnote 8; and Soileau v. Continental Insurance Company, footnote 5.
[13] One person cannot recover damages for mental anguish as a result of injuries to another. See Robertson v. Aetna Casualty & Surety Company, 232 So.2d 829; see also Dudley v. State Farm Mutual Automobile Ins. Co., La.App., 255 So.2d 462.
[14] See Smith v. Maxent, La.App., 283 So.2d 313, where an award of $750 was made to a guest passenger in an automobile who was knocked unconscious and treated at Charity Hospital for a frontal hematoma. See also Casagrande v. Roullier, La.App., 267 So.2d 260, where an award of $870 was made for bruises and lacerations of the nose and lip, bruises of the hands and abdomen, together with some pain of short duration in the back and shoulders.